UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

AGV SPORTS GROUP, INC.       *
    (Frederick County)
BALTIMORE PODIATRY GROUP,   *
    DRS. SCHEFFLER & SHEITEL, P.A.
    (Baltimore County)          *
GIVENS COLLISION REPAIR CENTER, INC.
    (Frederick County)          *
INTELLIGENT DEVICES, INC.
    (Baltimore County)          *
WILLIAM MICHAEL JACOBS
    (Howard County)            *
MARTIN PASCO
    (Montgomery County)       *
POWERS & POWERS, P.A.
    (Baltimore City)            *

    *Plaintiffs*               *

v.                             *

PROTUS IP SOLUTIONS, INC.     *
THOMAS J. MARTIN
JOSEPH NOUR              *
SIMON NEHME
MICHAEL JAY              *
THE MARVIN GROUP, LLC
TOMMY FARMER           *
SUNSTAR TRAVEL AND TOURS, INC.
JOSEPH D. HANNA         *
NEIL SCOTT LUXENBERG
DNA STAFFING SERVICES, INC.   *
BIO-PHARM DISTRIBUTION, INC.
                          *

    *Defendants*
*   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT

The Plaintiffs, AGV Sports Group, Inc., Baltimore Podiatry Group, Drs. Scheffler & Sheitel,

P.A., Givens Collision Repair Center, Inc., Intelligent Devices, Inc., William Michael Jacobs, Martin

Pasco, and Powers & Powers, P.A., through undersigned counsel, Michael C. Worsham, Esq., to sue

the Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),

and the Maryland Telephone Consumer Protection Act, Maryland Ann. Code, Commercial Law Art.,

§ 14-3201-3202, and allege:

## PARTIES

1.      Plaintiffs **AGV Sports Group, Inc.**, 3220 Roderick Road, Frederick, MD 21704, and

**Givens Collision Repair Center, Inc.**, 580 E. Church St., Suite 3, Frederick, Maryland

21701, are Maryland corporations, with their principal places of business in Frederick

County, Maryland, and are both citizens of Maryland.

2.      **Baltimore Podiatry Group, Drs. Scheffler & Sheitel, P.A.** (Baltimore Podiatry Group),

5205 East Drive, Suite I, Baltimore, Maryland 21227, and **Intelligent Devices, Inc.**,300

Redland Court, # 204, Owings Mills, MD 21117 are Maryland corporations, with principal

places of business in Baltimore County, Maryland, and are both citizens of Maryland.

3.      **William Michael Jacobs** is a natural person and citizen of Maryland, with his principal

place of business at 30 Corporate Center, Suite 300, 10440 Little Patuxent Parkway,

Columbia, Maryland 21044 in Howard County, Maryland.

4.      **Powers & Powers, P.A.** is a Maryland corporation, with a principal place of business at 417

St. Paul Place, Baltimore, Maryland 21202, and is a citizen of Maryland.

5.      Plaintiffs have all been citizens of Maryland at all times relevant to this suit, and have and

use fax machines located at their places of business exclusively in Maryland, and have

exerted control over and pay for the fax machines and their supplies, use and maintenance.

6.      Defendant **PROTUS IP SOLUTIONS, INC.** ("Protus") is a Canadian for-profit

corporation, with a principle office at 2379 Holly Lane, Suite 210, Ottawa, Ontario, Canada

K1V 7P2, and a citizen or subject of Canada.

7.      Defendant **THOMAS J. MARTIN** ("Martin") is a natural person, and has been the Chief Financial Officer for Protus for over five years, and is a citizen or subject of Canada.

8.      Defendant **JOSEPH NOUR** ("Nour") is an adult individual resident of Ontario, Canada and the Chief Executive Officer of Protus.

9.      Defendant **SIMON NEHME** ("Nehme") is an adult individual resident of Ontario, Canada and the Chief Technology Officer of Protus.

10.     Defendant **MICHAEL JAY** ("Jay"), 215 Parkdale, No. 1508, Ottawa, Ontario, Canada K1Y4T8, is a natural person, who has been the President or other controlling officer of a company doing business as America Find, Inc. a/k/a America e-Find, run from or located in Ontario, Canada, and is a citizen or subject of Canada.

11.     Defendant **THE MARVIN GROUP, LLC,** 5505 Buckhollow Drive, Alpharetta, Georgia 30005, is a Georgia for-profit corporation, in the business of soliciting and arranging for sales of businesses, and is a citizen of Georgia.

12.     Defendant **TOMMY FARMER**, 5505 Buckhollow Drive, Alpharetta, Georgia 30005, was and may still be an officer, manager or employee of The Marvin Group, LLC, a Georgia for-profit corporation. He is a citizen of Georgia.

13.     Defendant **SUNSTAR TRAVEL AND TOURS, INC.** ("Sunstar") is a Florida for-profit corporation, located at 1123 E. Altamonte Dr., Altamonte Springs, FL 32701, and is in the travel business.  Defendant **JOSEPH D. HANNA** , 825 Agnes Drive, Altamonte Springs, FL 32701, has been the President of Sunstar for all times relevant to this suit. Sunstar and Hanna are both citizens of Florida.

14.    Defendant **NEIL SCOTT LUXENBERG**, 4057 Delos Drive, Las Vegas, Nevada 89103, was/is an officer, manager or employee of Blue Jay, Inc., Red Rose International and Nationwide Chemical Corporation,  Nevada for-profit corporations. He is a citizen of Nevada.

15.    Defendant **DNA STAFFING SERVICES, INC.**, 16133 Ventura Boulevard, Suite 805, Encino, CA 91436 (agent: Daniel Levy) is a California company in the business of providing employee staffing services, and a citizen of California.

16.    Defendant **BIO-PHARM DISTRIBUTION, INC.**, 500 Winderley Place, Suite 122, Maitland, FL 32751 (President Elvin Montanez), is a Florida corporation in the business of selling drugs, and is a citizen of Florida.

17.     The individual Defendants named herein are sued for their personal actions and/or inactions and involvement in assisting with, facilitating, allowing and causing the violations or torts complained of herein in the District, and not simply because of any positions or titles they might have as an officer, director, manager and/or employee of any corporate entities named.

18.    All defendants are citizens or a subject of a state or country other than Maryland, and all defendants are diverse from all Plaintiffs.

## **JURISDICTION**

19.    Jurisdiction in Federal court is pursuant to 28 U.S.C. § 1332 because the amount in controversy between Plaintiffs and the Defendants is greater than $75,000, and all parties are citizens of different states. The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S. Code § 227 provides for a private right of action for violations of the TCPA and for violations of the regulations promulgated pursuant to the TCPA by the Federal Communications Commission (FCC) at 47 C.F.R. Part 64, Subpart 1200.  The Court has

4

supplemental jurisdiction under 28 U.S.C. § 1367 over any defendants for whom any specific Plaintiff does not have claims over $75,000 in claims or in controversy.

20.   Venue is proper in this District because the violations alleged took place in the District, and the Defendants regularly conducted or contracted or arranged to provide business or provide goods or services within and through the District or to assist others who provide goods or services or solicit those in the District, including but not limited sending or conspiring to send, or aiding and abetting the sending of, unsolicited advertisements by fax.

## STATEMENT OF ALLEGED FACTS

### Unsolicited fax ads sent to Plaintiffs

21.   Defendants Protus, Martin, Nour, and Nehme and sent or were materially and/or substantially involved and with a high degree of involvement in sending, unsolicited ads without prior express invitation or permission, and without any prior business relationship, to each plaintiff's fax machine, as follows:

| | |
|---|---|
| AGV Sports Group, Inc. | 431 fax ads |
| Baltimore Podiatry Group | 69 fax ads |
| Givens Collision Repair Center, Inc. | 9 fax ads |
| Intelligent Devices, Inc. | 40 fax ads |
| William Michael Jacobs | 83 fax ads |
| Martin Pasco | 170 fax ads |
| Powers & Powers, P.A. | 66 fax ads |
| Approximate total | 868 fax ads |

22.   The unsolicited faxes advertise and describe the commercial availability or quality of property, goods, or services, including but not limited to, business opportunities, cash advances, copiers, credit services, directories, domain registrations, drugs, financing, finding persons or assets, health care or discounts, life insurance, loans, mortgages, roofing, selling your business, staffing, stocks, travel, training, vacation, and vending machines.

5

23.     Protus, Martin, Nour, and Nehme had a high degree of involvement in, and actual notice of, the unlawful activity, but failed to take steps to prevent such facsimile transmissions.

24.     The offices of Plaintiffs Baltimore Podiatry Group, and Powers and Powers, P.A., made it a regular practice to call the toll free 'remove' number on the bottom of the faxes, starting as early as July 2003, to asked to be removed, and did so on a regular basis, and some or most of the numbers called were numbers maintained and managed by or for Protus.

25.     All fax ads, regardless of the sender or advertiser, failed to include the opt-out notice required by the July 9, 2005 Junk Fax Prevention Act and by 47 C.F.R. § 64.1200(a)(3).

26.     The fax ads were sent starting sometime in July 2003 for the earliest fax ads sent to Powers & Powers, and continue to be sent to some Plaintiffs up until the present.

27.     Protus is a fax broadcaster and regularly transmits large numbers of fax ads into Maryland.

28.     None of the fax ads identify Protus as the sender or identify Protus anywhere on the fax.

29.     Most of the ads do not identify the name of the advertiser, making it difficult, and in some cases impossible for Plaintiffs to identify the actual sender or advertiser.

30.     In addition to the fax ads sent by Protus, a few plaintiffs received unsolicited fax ads which advertise the same defendant advertiser, but which were sent by a different fax broadcaster other than Protus, for which these Plaintiffs seek damages, as follows:

| Plaintiff | Defendant | Fax ads received |
|---|---|---|
| AGV Sports Group | *Neil Luxenberg* | 5 fax ads (plus 4 from/via Protus) |
| Balt. Podiatry Group | *Neil Luxenberg* | 1 fax ads (none from/via Protus) |
| Balt. Podiatry Group | *Bio-Pharm Distrib.* | 3 fax ads (plus 1 from/via Protus) |
| Balt. Podiatry Group | *Sunstar and Hanna* | 1 fax ad (plus 1 from/via Protus) |

31.    Plaintiff's allege that a Protus sales or customer service employee named Bill Maynard
       assisted Luxenberg with coordinating and sending faxes advertising "Blue Jay" products. On
       information and belief, Plaintiffs allege that Neil Luxenberg also used a Vancouver company
       called Five Star Fax to send the "Blue Jay" fax ads that were not sent by Protus.

32.    Michael Jay was responsible for sending through Protus 13 unsolicited fax ads to Powers and
       Powers, P.A. soliciting background search and bank account location services. Powers &
       Powers called the 866-861-6270 on these fax ads many times, starting in November 6, 2003,
       requesting and trying to be removed from the faxing list, but still continued to receive
       unsolicited fax ads up to and including on July 28, 2008.

33.    Plaintiffs could not have reasonably discovered the actual sender and/or advertiser for many
       fax ads, including any fax ads sent over four years from the filing date of this suit, because
       of the ways Protus intentionally keeps itself and its client advertisers hidden, through, *inter
       alia*, not identifying itself or the advertiser on fax ads, not identifying itself on or at any of
       the toll free removal numbers printed on the fax ads, not encouraging and perhaps
       discouraging its clients to identify themselves, not transmitting caller ID name and number
       during the fax transmissions, Protus advising its clients not to identify themselves during
       calls from recipients or to respond to lawsuit threats, for fear of being identified, and did so
       despite the requirement of 47 C.F.R. § 68.318 to clearly identify either (1) the business,
       entity or individual sending the faxed message or (2) the number of the sending machine or
       the business, entity or individual.

34.    Protus's only real business was fax broadcasting, and at the times relevant to this suit
       regularly broadcast fax ads across the U.S. in very large numbers, many if not all of which

were unsolicited fax ads, including those sent to Plaintiffs.

35.     Protus has been and is a fax broadcaster, in the business, *inter alia*, of obtaining and providing fax numbers, suggesting or arranging for clients to use and obtain these or other fax numbers, providing equipment, web interfaces and/or computers to enable it and its clients to send large numbers of fax advertisements, including sending unsolicited faxes to these or other fax numbers, and subscribing to and providing for its clients toll-free removal or opt-out numbers (aka IVR or interactive voice response numbers) for persons who receive the unsolicited faxes to call to try to stop receiving unsolicited faxes, and provides other services related to or necessary for sending and receiving faxes.

36.     Protus changed its operation over time, because of TCPA enforcement, to try to distance it self from the sending of unsolicited fax ads, by creating a web site for its clients to access and upload the graphic content of fax ads that would be sent by and through Protus.

37.     Protus, Martin, Nour, and Nehme knew that Protus clients did and could not have had prior express invitation or permission of the intended fax recipients, due, *inter alia*, to the nature of the product or service sold, the large numbers of fax numbers being used and successfully sent through Protus's fax transmission system, and the large number of requests made to toll free numbers set up and regularly managed by Protus for removal or opt-out requests.

38.     Protus regularly monitored the number of fax ads sent by clients, for billing purposes, and to prepare transmission reports to document and track sending and transmission success rates, and offered to make some of this information available to clients on its web site.

**THE INDIVIDUAL PROTUS DEFENDANTS' ACTIVE PARTICIPATION IN THE**

**PROTUS OPERATION TO SEND UNSOLICITED FAX ADS**

39.  Each one of the individual Protus-related defendants (Martin, Nour and Nehme) has or had during the time of employment by Protus, a high degree of involvement with all relevant functions of Protus in its operation to send fax ads.

40.  Each one of the individual defendants oversees, or oversaw during the time of Protus employment, all relevant functions of Protus.

41.  Each one of the individual defendants has, or had during the time of Protus employment, a high degree of involvement with the transmission of faxes by Protus' equipment.

42.  Each one of the individual defendants oversees, or oversaw during the time of Protus employment, the relevant aspects of Protus' fax transmission operations.

43.  Each one of the individual defendants has, or had during the time of Protus employment, a high degree of involvement with the sending of unsolicited fax ads.

44.  Each one of the individual defendants knows, or knew during the time of Protus employment, that Protus' equipment sent and was used for sending many unsolicited fax ads without prior express invitation or permission. However, these individual defendants failed to stop the transmission of the fax ads despite having the ability and authority to do so.

45.  As CFO Martin knew and could correlate Protus's income with the large numbers of fax ads transmitted by Protus or through its system.

46.  The individual and corporate Defendants and their employees, assistants, contractors, lawyers and other agents conspired and aided and abetted each other and others to send at the unsolicited fax advertisements for commercial services or products on behalf of Protus and its clients to the telephone facsimile machines of each Plaintiff, as well as to many others in Maryland, without each Plaintiffs' or the recipients prior express invitation or permission.

47.     Defendant Martin started at Protus 7 years ago as CFO and maintains that position, and knew how Protus ran, what it did, and specifically, knew Protus regularly sent or had a material and substantial role in sending and facilitating the sending of unsolicited fax ads without prior express consent and in violation of the TCPA into Maryland and to Maryland fax numbers, and also financially benefitted from and ratified the illegal acts.

48.     As CFO , CEO and CTO, Martin, Nour and Nehme knew about the lawsuits against Protus or its clients.

49.     On July 23, 2004 a Protus fax ad victim in NJ named Richard Zelma spoke with Martin, who promptly recognized Zelma, and was aware that Zelma was contacting Protus's attorney regarding the illegal fax ads sent in violation of the TCPA, and on information and belief approved or processed (as CFO) a settlement with Zelma.

50.     Each one of the named Defendants separately and independently took and instructed both themselves and/or others to take actions that they knew would result in the sending of large numbers of unsolicited faxes into Maryland including to the Plaintiffs, were aware that the database they supplied or used or was provided to them contained fax numbers in area codes 240, 301, 410 and/or 443 that were used actively and regularly to send large numbers of fax ads to these Maryland area codes with the intent and expectation that persons in one or more of these area codes would respond favorably, thus generating business and income.

51.     Each named defendant engaged in business in Maryland regularly during the periods when their respective fax ads were sent and targeted towards Maryland.

52.     Protus or its clients were sued for violations of the TCPA, and Protus became aware of the TCPA through this and other ways, and did so prior to sending the fax ads alleged herein.

53.    Protus provided and coordinated the use of toll-free numbers printed on unsolicited fax ads

to encourage persons to call to have their fax number removed from a database of fax

numbers maintained by Protus so as to discourage state and federal enforcement or suits like

the instant suit.  These were created so as to avoid both the liability and the visibility of

Protus, and to update fax number databases.

**Caller ID failure**

54.    Protus and its system does not transmit caller ID name and number when sending fax ads.

55.    Protus subscribes to some numbers through Bell Canada, and sends the fax ads with or

through these numbers, which may have included 416-364-9999 (travel fax), 514-667-5260,

514-667-5269, and 514-958-0001 (travel fax).

56.    Protus could have programmed or arranged with its telecommunications provider to transmit

both name and number to Caller ID, but did not do so in order avoid detection.

**FCC Citations**

57.    Several clients of Protus were cited by the FCC for TCPA violations, including Blue Jay,

Inc. and Luxenberg, and Sunstar Travel and Hanna.

58.    Despite the FCC Citations against its clients, Protus, with  Martin, Nour and Nehme's

knowledge, continue sending unsolicited fax ads to Plaintiffs and into MD on a regular basis.

59.    Many if not most of the faxes sent by Defendants to Plaintiffs and others are misleading and

deceptive and constitute unfair and deceptive trade practices, because, *inter alia*, they do or

may (1) mislead recipients into believing the recipient has already given express permission

to be sent faxes; (2) mislead recipients to believe they have an affirmative duty to remove

themselves from some unidentified database of fax numbers; (3) mislead the recipient to

11

believe that the entity advertised on the fax and the sender of the fax are the same entity; (4) mislead the recipient to believe that the faxes were sent to specific targeted persons such as to "Corporate Employees" when in fact the faxes were simply sent out to fax numbers in Defendants' fax number lists databases; (5) mislead the recipient to believing the fax advertised a special bargain only available to a select group; (6) mislead the recipient by failing to state clearly that a travel offer includes a required time share or similar goods or services presentation and failing to state the length of the required presentation, and (7) fail to identify the resort or timeshare associated with the offer on the fax, and (8) fail to disclose hidden fees such as port fees on travel packages (for travel fax ads); (9) fail to clearly identify the true person or entity who is promoting the stock(s) advertised on the fax and the actual legal entity sending/touting the stock promotion; and (10) include testimonials that are fictitious and may also include fake addresses or phone numbers that are inoperative or do not allow one to speak to a real person.

60.    Defendants' actions are an invasion of privacy, unfair, abusive and deceptive practices and violate the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. § 310, and all Defendants are telemarketers within the meaning of this Rule.

61.    The violations alleged were and are part of a related, connected, ongoing and systematic pattern and practice of conduct.

62.    Defendants' violations may have adverse impacts on many others, including (1) Walt Disney companies whose trademarks and/or copyrights are violated or diluted by certain travel faxes sent with the Disney name or other recognizable Disney symbols, for which a federal suit by Disney was filed to stop this practice; (2) investors in the stock market which buy stocks

which are or may be deceptively described on the faxes sent by Defendants in huge amounts that Defendants know are intentionally sent to effect the price of the stock, which has led to SEC investigations and/or suits; and (3) legitimate travel and mortgage services companies who do not use cheap and illegal means to advertise, including possibly companies within Maryland; and (4) even clients of Protus some of whom were inevitably sued for sending unsolicited faxes, the illegality and risks of which were not adequately communicated.

63.     Defendant Protus sent 822 fax ads on or after June 1, 2004, the effective date of the Maryland Telephone Consumer Protection Act, received by Plaintiffs as follows:

| | # of fax ads received after June 1, 2004 |
|---|---|
| AGV Sports Group, Inc. | 427 fax ads |
| Baltimore Podiatry Group, | 68 fax ads |
| Givens Collision Repair Center, Inc. | 9 fax ads |
| Intelligent Devices, Inc. | 40 fax ads |
| William Michael Jacobs | 99 fax ads |
| Martin Pasco | 134 fax ads |
| Powers & Powers, P.A. | 45 fax ads |
| **TOTAL # of fax ads received after June 1, 2004** | **822 fax ads** |

64.     Protus continues to send unsolicited fax advertisements without prior express permission.

**Luxenberg corporate operations**

65.     Luxenberg ran Blue Jay, Inc., Red Rose, Inc. and Nationwide Chemical Corp. as thinly and under-capitalized entities which failed to observe corporate formalities, because they were used only or primarily to benefit by illegal fax broadcasting, and all have been dissolved.

66.     Luxenberg ran Blue Jay, Inc. out of his house, was responsible for making and ratifying all the faxing for Blue Jay (sometimes as Red Rose or Nationwide Chemical Corp.) through Protus, and was the only Blue Jay shareholder or officer.

67.    Luxenberg's companies failed to have the required or appropriate corporate board meetings.

## Michael Jay corporate operations

68.    Michael Jay ran America Find, Inc. as a one person operation, and made and ratified all of the decisions related to sending fax ads soliciting its services.

## The Federal Telephone Consumer Protection Act (TCPA)

69.    Since July 9, 2005, the TCPA, 47 U.S.C. § 227(b)(1)(C), has made it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" and prior to July 9, 2005 the TCPA  similarly made it unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

70.    The TCPA, 47 U.S.C. § 227(b)(3), provides an explicit private right of action for a minimum of $500 in statutory damages for each violation of the TCPA or FCC regulations, and also provides for injunctive relief to enjoin violations of the TCPA.

71.    The TCPA, 47 U.S.C. § 227(b)(3) explicitly provide for up to triple damages if the court finds that a person willfully or knowingly violated the TCPA or FCC regulations.

## COUNTS 1-3

Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein for all of the following Counts.

## COUNT 1 - Violations of the TCPA for sending Unsolicited Advertisements

72.    All of each Defendants' fax ads were sent to Plaintiffs without prior express invitation or permission, and advertised the commercial availability or quality of property, goods or services.

14

73.    All of Defendants' unsolicited advertisements sent to the Plaintiffs' fax machines were sent in willful and/or knowing violation of the TCPA, 47 U.S.C. § 227(b)(1)(C) and FCC regulations issued pursuant to the TCPA.

### Maryland Telephone Consumer Protection Act (Maryland TCPA)

Plaintiffs incorporates the above allegations, and further alleges the following violations of the Maryland TCPA for all fax ads sent or received on or after June 1, 2004, which makes each violation of the federal TCPA and each prohibited practice therein a separate violation:

### COUNTS #2 and 3

74.    **Count 2:** For fax ads sent on or after June 1, 2004 Defendants' violations in Count #1 also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. § 14-3201-3202.

75.    **Count 3:** For fax ads sent on or after June 1, 2004 Defendants' failure to provide or transmit Caller ID information also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. § 14-3201-3202 and FCC and FTC regulation 16 C.F.R. § 310.4(a)(7)).

### DAMAGES AND RELIEF REQUESTED

76.    **COUNT 1**: Plaintiffs each demand $1,500 for each unsolicited fax ad page, sent without prior express invitation or permission, and in willful and knowing violation of the TCPA, 47 U.S.C. § 227(b)(1)(C), and injunctive relief enjoining each Defendants' violations.

77.    **COUNT 2**: Plaintiffs each request $500  for each unsolicited fax ad which constitutes an unlawful or deceptive practice, pursuant to the Maryland TCPA, Maryland Ann. Code § 14-3201-3202, and reasonable attorney fees and costs.

78.    **COUNT 3**: Plaintiffs each request $500 for each unsolicited fax sent without transmitting Caller ID which constitutes an unlawful or deceptive practice, pursuant to the Maryland

TCPA, Maryland Ann. Code § 14-3201-3202, and reasonable attorney fees and costs.

**WHEREFORE** the Plaintiffs seek:

(1) **From Protus, Martin, Nour and Nehme jointly and severally**:  $2,500 in statutory damages under the federal TCPA and Maryland TCPA, in an amount over $75,000 for each, and totaling $2,147,500 Plaintiff for the unsolicited advertisements sent by Defendants to Plaintiffs without prior express invitation or permission, or Caller ID information, *except* Givens Collision Repair Center, Inc. which seeks $22,500 from these defendants, for a total of $2,170,000 sought by all Plaintiffs against these Defendants;

(2) **From Michael Jay**: Powers and Powers, P.A. seeks $32,500 damages for the 13 unsolicited fax ads identified so far which solicit Jay's asset and background services;

(3) **From The Marvin Group, LLC and Tommy Farmer jointly and severally**:  AGV Sports Group seeks $80,000 (32 faxes); the Baltimore Podiatry Group seeks $2,500 (1 faxes); Jacobs seeks $17,500 (7 faxes); Pasco seeks $35,000 (14 faxes); and Powers & Powers, P.A. seeks $7,500 (3 faxes).

(4) **From Sunstar Travel and Joseph Hanna jointly and severally**: AGV Sports Group and Jacobs each seek $2,500, and the Baltimore Podiatry Group and Powers & Powers, P.A. each seek $5,000;

(5) **From Luxenberg**: AGV Sports Group, Inc. seeks $22,500, the Baltimore Podiatry Group seeks $2,500; and Jacobs seeks $2,500;

(6) **From DNA Staffing Services, Inc.**: Baltimore Podiatry Group seeks $10,000;

(7) **From Bio-Pharm Distribution, Inc.**: Baltimore Podiatry Group seeks $10,000;

(8) **Count 1:** Plaintiffs request injunctive relief pursuant to  the TCPA, 47 U.S.C. §

227(b)(3), prohibiting each Defendant and/or any and all of their agents, including companies created or used by any Defendant, from sending unsolicited advertisements via fax to Plaintiffs and other persons in the U.S., or from sending faxes with proper identification or other identifying information, or from sending faxes that in other way violate the TCPA or constitute an unlawful trade practice, and from using a computer or any similar device for either sending unsolicited faxes or searching for and obtaining fax or telephone numbers. Plaintiff requests injunctive relief prohibiting the Defendants from using agents or from creating new companies or entities, directly or indirectly, to perform the same function or activities enjoined in this suit, and to enjoin Protus and Martin from having a high degree of involvement in the unlawful sending of unsolicited fax ads.

(9) reasonable attorney's fees under the Maryland TCPA, costs, pre-judgment interest, and other such relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs request a trial by jury for all matters triable by a jury.

Respectfully submitted,

/s/ *Michael C. Worsham*

_____

Michael C. Worsham, Esq.
1916 Cosner Road
Forest Hill, Maryland 21050
(410) 557-6192
Fax: (410) 510-1870
mcw@worshamlaw.com
Federal Bar # 25923

*Attorney for Plaintiffs*
December 16, 2008