IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| AGV SPORTS GROUP, INC., *et al.* | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No.: RDB 08-3388 |
| | * | |
| PROTUS IP SOLUTIONS, INC., *et al.* | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

This case has been brought under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227 (Count I), and the Maryland Telephone Consumer Protection Act, Maryland Ann.

Code, Commercial Law Art., §§ 14-3201 and 14-3202 (Counts II & III), by a group of seven

Plaintiffs: (1) AGV Sports Group, Inc.; (2) Baltimore Podiatry Group, Drs. Scheffler & Sheitel,

P.A.; (3) Givens Collision Repair Center, Inc.; (4) Intelligent Devices, Inc.; (5) Powers &

Powers, P.A.; (6) William Michael Jacobs; and (7) Martin Pasco (collectively "Plaintiffs").

Plaintiffs contend that they each received (in varying amounts, and from one or more of

Defendants) unsolicited fax advertisements sent by the following Defendants: (1) Protus IP

Solutions, Inc. ("Protus"); (2) Thomas J. Martin, Chief Financial Officer of Defendant Protus;

(3) Joseph Nour, Chief Executive Officer of Defendant Protus; (4) Simon Nehme, Chief

Technology Officer of Defendant Protus; (5) Michael Jay, an officer of America Find, Inc.; (6)

Sunstar Travel and Tours, Inc.; and (7) Joseph D. Hanna, President of Defendant Sunstar.[1] Plaintiffs bring this suit in federal court based on diversity of citizenship.  *See* 28 U.S.C. § 1332.

There are presently five pending motions in this case,[2] three of which are motions to dismiss.[3]  Defendants Thomas J. Martin and Simon Nehme have filed jointly, and Defendant Joseph Nour separately, Motions to Dismiss for Lack of Personal Jurisdiction (Paper Nos. 15, 45), and Defendant Michael Jay has filed a Motion to Dismiss on the grounds that this Court lacks subject matter jurisdiction (Paper No. 35).  The remaining two non-dispositive motions are Plaintiffs' Motion to Preserve and Protect Records (Paper No. 72) and Plaintiffs' Motion for Reconsideration (Paper No. 79), the latter of which addresses this Court's previous order requiring Plaintiffs to return to Defendants certain confidential materials received in preparation for a settlement conference.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).

For the reasons that follow, Defendants Thomas J. Martin's and Simon Nehme's Motion

---

[1] Plaintiffs have dismissed with prejudice their claim against Defendant Bio-Pharm Distribution, Inc.  Several other Defendants, including The Marvin Group, LLC, Tommy Farmer, Neil Scott Luxenberg, and DNA Staffing Services, Inc., have not yet entered an appearance.  Consequently, an Order of Default has been entered as to those four Defendants. (*See* Paper Nos. 28, 29, 30, & 41.)

[2] Defendant Protus's Motion to Expedite Resolution of Its Emergency Motion to Stay Production of Documents (Paper No. 62) is deemed MOOT, as Magistrate Judge Susan K. Gauvey of this Court previously denied Protus's Emergency Motion to Stay (Paper No. 61) by order dated March 13, 2009 (Paper No. 63).  Defendant Protus's Motion to File Sur-Reply to Plaintiffs' Motion to Reconsider (Paper No. 85) is GRANTED, and this Court will consider Protus's surreply later in this Memorandum Opinion when discussing Plaintiffs' Motion to Reconsider.

[3] Defendants Protus, Sunstar, and Joseph D. Hanna have filed an Answer to the Complaint, and consequently do not have any pending motions to dismiss under Rule 12(b).  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [*i.e.* the Rule 12(b)(1)-(7) defenses] must be made before pleading if a responsive pleading is allowed.").

to Dismiss for Lack of Personal Jurisdiction (Paper No. 15) is GRANTED, Defendant Joseph

Nour's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 45) is GRANTED and

Defendant Michael Jay's Motion to Dismiss (Paper No. 35) is GRANTED.  Additionally,

Plaintiffs' Motion to Preserve and Protect Records (Paper No. 72) is DENIED, and Plaintiffs'

Motion for Reconsideration (Paper No. 79) is also DENIED.

## DISCUSSION

**I.     Motions to Dismiss for Lack of Personal Jurisdiction**

The three corporate officers of Defendant Protus who are named as Defendants in this

case, *i.e.* Thomas J. Martin ("Martin"), Joseph Nour ("Nour"), and Simon Nehme ("Nehme")

(collectively "the Individual Protus Defendants"), have filed Motions to Dismiss for Lack of

Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[4]  Protus itself

has not joined the pending motions, as it has answered Plaintiffs' Complaint.

The applicable legal paradigm to analyze a Rule 12(b)(2) motion is well established.  If

the defendant's contacts with the forum state are "continuous and systematic," the district court

has general jurisdiction over the nonforum defendant.  *Helicopteros Nacionales de Colombia v.*

*Hall*, 466 U.S. 408, 414-15 (1984).  Plaintiffs have not contended that this Court may exercise

personal jurisdiction over the Individual Protus Defendants on the basis of their "continuous and

systematic" contacts with Maryland.  Where, as here, the contacts are not sufficient to establish

general jurisdiction, the plaintiff must establish the existence of specific jurisdiction by

demonstrating that:

---

[4] Defendants Martin and Nehme filed their Motion to Dismiss on January 26, 2009, and
Defendant Joseph Nour essentially adopted their arguments by filing a nearly identical Motion to
Dismiss of his own on January 30, 2009.

> (1) the nonforum defendant purposely directed its activities toward residents of the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, *i.e.*, is consistent with "fair play and substantial justice."

*Ritz Camera Centers Inc. v. Wentling Camera Shops Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997)

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985)).

A federal district court may exercise personal jurisdiction over a nonresident defendant "if two conditions [are] satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). Because "Maryland has construed [its] long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause," *Mackey v. Compass Marketing*, 892 A.2d 479, 486 (Md. 2006), it has often been said that the two inquiries merge into one. *See, e.g., Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (citing cases). Despite the coextensive reach of Maryland's long-arm statute and the Due Process Clause, however, the Court of Appeals of Maryland recently clarified that "[d]etermination of personal jurisdiction is a two-step process. First, the requirements under the long-arm statute must be satisfied, and second, the exercise of jurisdiction must comport with due process." *Mackey*, 892 A.2d at 486; *see also id.* at 493 n.6 (explaining that the court's prior statement that "our statutory inquiry merges with our constitutional examination" does not "mean . . . that it is now permissible to simply dispense

-4-

with analysis under the long-arm statute").  Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction."  *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001).

The Individual Protus Defendants argue that this Court lacks personal jurisdiction over them because Protus is a Canadian corporation and, as officers of Protus and citizens and residents of Canada, the Individual Protus Defendants have had virtually no individual contact with the State of Maryland.  Plaintiffs contend, almost exclusively, that this Court possesses personal jurisdiction over the Individual Protus Defendants under a conspiracy theory of personal jurisdiction.

### A.    Conspiracy Theory of Personal Jurisdiction

The conspiracy theory of personal jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant without sufficient contacts with the forum if the nonresident defendant was part of a conspiracy that committed jurisdictionally sufficient acts within the forum.  *See Mackey,* 892 A.2d at 484 ("[T]he conspiracy theory permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes.").  In *Mackey*, the Court of Appeals of Maryland squarely held that Maryland law recognizes the conspiracy theory of personal jurisdiction.  The *Mackey* decision was issued in response to a question certified by Judge Andre M. Davis of this Court.[5]  *See Compass Mktg., Inc. v. Schering-Plough Corp.*, 438 F. Supp. 2d 592 (D. Md. 2006).

---

[5] Specifically, Judge Davis certified the following two questions: (1) Whether Maryland recognizes the conspiracy theory of jurisdiction as a matter of state law?; and (2) If Maryland recognizes the conspiracy theory of jurisdiction, what elements must a plaintiff allege for a court to have jurisdiction over the out-of-state defendant under that theory?  *See Mackey*, 892 A.2d at 481.

The Court of Appeals explained that

> [i]t is clear today that physical presence within a state is not a necessary prerequisite to the proper assertion of personal jurisdiction and that under most states' long-arm statutes, certain acts and effects of those acts may be the basis for a court to exercise jurisdiction of a nonresident as well as a person who has not physically entered within the territorial borders of the state.

*Mackey,* 892 A.2d at 483.  The Court of Appeals then invoked the substantive law of agency to determine that "[i]t is long-established that personal jurisdiction may be exercised over a nonresident defendant on the basis of the actions of the nonresident defendant's agent."  *Id.* at 483-84.  Thus, the Court of Appeals recognized that, under Maryland's long-arm statute and the Due Process Cause of the Fourteenth Amendment, the conspiracy theory of personal jurisdiction may be used to exercise personal jurisdiction over a non-resident defendant.  Finally, the Court of Appeals adopted, without modification, the elements enunciated by this Court in *Cawley v. Bloch*, 544 F. Supp. 133 (D. Md. 1982):

> Under that doctrine, when
>
> (1) two or more individuals conspire to do something
>
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
>
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Id.* at 135.

Although Plaintiffs have not cited to any specific provision of the Maryland long-arm statute, it appears that Plaintiffs' argument is that, by sending unsolicited faxes to recipients located in the State of Maryland, Protus committed an overt act sufficient to subject it to personal jurisdiction under Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103.  Because Protus's alleged overt action subjected it to personal jurisdiction in Maryland, Plaintiffs argue that the Individual Protus Defendants, who were co-conspirators with Protus, are likewise subject to personal jurisdiction in Maryland under the conspiracy theory of personal jurisdiction.

It is an inescapable constitutional requirement that the plaintiff must first make a *prima facie* claim that a conspiracy existed before a defendant is hailed into a foreign court based on the conspiracy theory of personal jurisdiction.  Without the requisite conspiracy, there can be no basis to attribute the overt acts committed by another to a nonresident defendant without direct contacts with the forum.  *See Mackey*, 892 A.2d at 490-91 (stating that a "co-conspirator to whom the acts of another co-conspirator are attributed must have agreed to participate in a conspiracy that he or she could reasonably have expected at the time of agreement to involve the forum-related actions attributed to him or her").  Indeed, the first element enunciated in *Crawley*, and adopted in *Mackey*, is that the plaintiff establish that "two or more individuals conspire[d] to do something."[6] *Cawley*, 544 F. Supp. at 135; *see also Mackey*, 892 A.2d at 485 (analyzing the

---

[6] Plaintiffs' Complaint requests statutory relief pursuant to the Telephone Consumer Protection Act (Count I) and the Maryland Telephone Consumer Protection Act (Counts II & III), and Plaintiffs have not alleged an independent civil conspiracy claim.  The fact that Plaintiffs have not sought recovery under a civil conspiracy claim does not itself preclude them from seeking to use conspiratory allegations as a basis of personal jurisdiction over the Individual Protus Defendants.  *Cf. Mackey*, 892 A.2d at 483 (explaining that "a civil conspiracy is not 'capable of independently sustaining an award of damages in the absence of other tortious

elements of conspiracy before holding that the conspiracy theory of personal jurisdiction satisfies Maryland's long-arm statute and the Due Process Clause).

Plaintiffs cannot meet their *prima facie* showing because their conspiracy argument is premised entirely on an alleged conspiracy between Defendant Protus and three of its corporate officers, Defendants Martin, Nour, and Nehme. The Individual Protus Defendants are legally incapable of conspiring (1) with Protus, the corporate entity with which each Individual Protus Defendant is employed, and (2) with each other in their official corporate capacities. In *Baltimore-Washington Telephone Co. v. The Hot Leads Co.*, *L.L.C.*, 584 F. Supp. 2d 736 (D. Md. 2008),[7] a case involving alleged violations of the Telephone Consumer Protection Act and the Maryland Telephone Consumer Protection Act, the same statutes at issue here, this Court explained as follows:

> [T]he "intracorporate conspiracy doctrine" holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*Id.* at 744 (citing *Marmott v. Maryland Lumber Company*, 807 F.2d 1180, 1184 (4th Cir. 1986);

---

injury to the plaintiff'" (citing *Hoffman v. Stamper*, 867 A.2d 276, 290 (2005))). Nonetheless, Plaintiffs must essentially prove a civil conspiracy to meet their burden to establish the conspiracy theory for personal jurisdiction, even if relief is ultimately unavailable upon such proof.

[7] Contrary to Defendant Nour's contention, *Baltimore-Washington Telephone* did not "reject[] the application of the conspiracy theory of personal jurisdiction in [Telephone Consumer Protection Act] cases." Nour's Mem. Supp. Mot. to Dismiss 12) The issue in *Baltimore-Washington Telephone* was whether the plaintiff's civil conspiracy claim survived the defendants' Rule 12(b)(6) motion, and the issue of personal jurisdiction over the defendants was never raised. *See Baltimore-Washington Telephone*, 584 F. Supp. 2d 744-45.

*Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985); *Denney v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001)).  Therefore, Plaintiffs' assertion of personal jurisdiction over the Individual Protus Defendants must fail because the Complaint can only be construed as alleging a conspiracy between Protus and the Individual Protus Defendants, or between the Individual Protus Defendants themselves in their corporate capacities.[8]

Because Plaintiffs' Complaint does not allege that any of the Individual Protus Defendants conspired with non-Protus Defendants, *i.e.* Simon Nehme, Michael Jay, Sunstar Travel and Tours, Inc. or Joseph D. Hanna, this case is distinguishable from *Compass Marketing*.  In that case, the plaintiff, Compass Marketing, was a Maryland corporation that sued two non-forum corporations, Schering-Plough and Wyeth, and two of the corporations' officers, Severino and Mackey.  *See Mackey*, 892 A.2d at 482-83.  After the Court of Appeals' decision in *Mackey*, the defendants in *Compass Marketing* renewed their motions to dismiss under Rule

---

[8] Plaintiffs' Complaint clearly contains allegations against the Individual Protus Defendants that pertain to their capacity as corporate officials of Protus.  The Complaint alleges that the Individual Protus Defendants: (1) were materially or substantially involved and/or had a high degree of involvement in sending faxes to each Plaintiff's fax machines, Comp. ¶ 21; (2) had a high degree of involvement with relevant functions of Protus in its operation to send fax ads, *id*. ¶ 23; (3) oversaw all relevant functions of Protus, *id*. ¶ 40; (4) oversaw Protus fax transmissions, *id*. ¶¶ 41-43; (5) knew that Protus's equipment was used for sending unsolicited faxes and failed to stop the transmissions, *id*. ¶ 44; (6) authorized and approved the sending of faxes, *id*.; and (7) knew about the prior lawsuits against Protus or its clients, *id*. ¶ 48.  The Complaint does not, however, allege that the Individual Protus Defendants took any individual action apart and aside from their roles as corporate officials of Protus.

The Complaint clearly lacks any averments that would place the Individual Protus Defendants within one of the recognized exceptions to the intracorporate conspiracy doctrine.  *See Baltimore-Washington Telephone*, 584 F. Supp. 2d at 744 ("There are two exceptions to this general rule.  The first is where the officer or agent has an 'independent legal stake in achieving the corporation's legal objective' and the other is where the acts of the officers were unauthorized by the corporate defendant." (citations omitted)).

12(b)(2).  Applying *Mackey*, this Court determined that the plaintiff had adequately pled a

conspiracy, but made clear that the conspiracy was not between the officer and the officer's own

corporation, but rather was between the officer and the other officer's corporation.  This Court

stated as follows:

> Because Wyeth's employee, Severino, is alleged to have conspired
> with Schering-Plough, Schering-Plough can be considered the agent
> of Severino, and its related business transactions are attributable to
> Severino.  Likewise, because Schering-Plough's employee, Mackey,
> is alleged to have conspired with Wyeth, Wyeth may be considered
> an agent of Mackey, and its related business transactions are
> attributable to Mackey.  Thus, the Maryland long-arm statute, §
> 6-103(b)(4), is satisfied, exactly as was contemplated by the Court of
> Appeals.

*Compass Marketing*, 438 F. Supp. 2d at 596.  Here, unlike *Compass Marketing*, the alleged

conspiracy is between a corporate entity and the entity's own officers.  Such a scenario is a legal

impossibility, and thus cannot form the requisite conspiracy upon which personal jurisdiction

may be exercised.

However, even if the Complaint could be construed to allege unlawful actions on the part

of the Individual Protus Defendants in their individual capacities (and thus making the

intracorporate conspiracy doctrine inapplicable), the Complaint fails to adequately allege a

conspiracy.  A conspiracy claim must be pled with the same specificity typically required from a

plaintiff—the "plaintiff's obligation to provide grounds for his entitlement to relief requires more

than labels and conclusions, and formalistic recitation of the elements of a cause of action will

not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In Maryland, a conspiracy has been defined as "a combination of two or more persons by

an agreement or understanding to accomplish an unlawful act or to use unlawful means to

accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Mackey*, 892 A.2d at 485 (quoting *Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)). "The plaintiff must prove an unlawful agreement, the commission of an overt act in furtherance of the agreement, and that as a result, the plaintiff suffered actual injury." *Mackey*, 892 A.2d at 485. Moreover, the plaintiff must show that the alleged co-conspirators had knowledge of the unlawful conspiracy by establishing "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc*., 454 A.2d 367, 368 (Md. Ct. Spec. App. 1983) (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)).

In this case, Plaintiffs' Complaint contains conclusory allegations that provide this Court with an inadequate basis to assume the existence of a conspiracy. In their Complaint, Plaintiffs contend generally that

> [t]he individual and corporate Defendants and their employees, assistants, contractors, lawyers and other agents conspired and aided and abetted each other and others to send . . . the unsolicited fax advertisements for commercial services or products on behalf of Protus and its clients to the telephone facsimile machines of each Plaintiff, as well as to many others in Maryland, without each Plaintiff['s] or the recipients prior express invitation or permission.

Compl. ¶ 46; *see also* Compl. ¶ 20 (alleging that venue is proper because "the violations alleged took place in the District" by way of "the Defendants . . . conspiring to send, or aiding and abetting the sending of, unsolicited advertisements by fax"). The Complaint fails to specifically allege that the Individual Protus Defendants reached a "meeting of the minds," and also fails to amplify the other allegations by demonstrating their connection to the purported conspiracy. Nor

-11-

have the Plaintiffs supplemented their Complaint with any affidavits or extrinsic evidence substantiating their bare allegations.  Viewing Plaintiffs' Complaint in their favor, this Court cannot conclude that they have sufficiently pled a conspiracy.  *See Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 59 (D.D.C. 2005) (explaining that "conclusory allegations are simply insufficient to establish a court's jurisdiction under the conspiracy theory" and holding that "the plaintiff has simply failed to allege facts with particularity that support the existence of a conspiracy").

Consequently, this Court rejects Plaintiffs' attempt to utilize the conspiracy theory of personal jurisdiction to hail the Individual Protus Defendants, *i.e.* Thomas J. Martin, Joseph Nour, and Simon Nehme, into this Court.

### B.     Individual Personal Jurisdiction

Conspiracy theories aside, this Court will briefly address whether the Individual Protus Defendants may be sued in this Court simply because they are officers of Protus, which has filed its Answer in this case.  As mentioned previously, Plaintiffs have relied almost exclusively on the conspiracy theory of personal jurisdiction to support their claim, and they have also failed to specifically cite to any provision of Maryland's long-arm statute in either their Complaint or in any of their other submissions to this Court.  Because Plaintiffs bear the burden of proof, dismissal is appropriate based on these circumstances alone.  *See Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n.1 (D. Md. 2004) ("Although it is preferable for a plaintiff to identify the relevant provision(s) of the long-arm statute in its complaint, this omission alone does not warrant dismissal *if* the plaintiff properly references the statute in a memorandum responding to a defendant's motion to dismiss." (emphasis added)).

It is firmly established in this district that a corporate officer is not subject to this Court's jurisdiction simply by virtue of his or her corporation's activities in Maryland. *See, e.g., Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 604 (D. Md. 2008) ("[S]imply because Caprario and Puzzo worked for IST does not make them subject to jurisdiction wherever IST might be sued."); *Harte-Hanks Direct Mkt. v. Varilease Tech.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004)("Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically flow from personal jurisdiction over the corporation."); *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990) (finding "no basis whatsoever for holding that merely because a corporation transacts business in the state . . . or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally"); *Quinn v. Bowmar Publ'g Co.*, 445 F. Supp. 780, 785 (D. Md. 1978) (stating that a court cannot obtain jurisdiction over individual officers or employees based "upon jurisdiction over the corporation").  Instead, a corporate officer may only be hailed into a foreign court based on the corporate officer's *individual* contacts in the forum.[9]

The Individual Protus Defendants have each submitted affidavits in which they declare that they: (1) are not residents of Maryland and have not worked or been employed in Maryland; (2) have not solicited sales or conducted business in Maryland; (3) have never owned or leased any real estate in Maryland; (4) have never maintained a mailing address, post office box, telephone, bank account, or safe deposit box in Maryland; (5) do not have any interest in any trust administered by Maryland, or owned, possessed, or controlled anything of value in Maryland; (6) have not performed any duties as an officer of a Maryland corporation, have not

––––––––––––––––––––

[9] Plaintiffs have provided this Court with no basis to pierce the corporate veil.

managed any day-to-day operations of any business in Maryland, and have not been a party to a contract made within Maryland; and (7) have never paid taxes in Maryland or held any license issued by Maryland.  *See* Martin and Nehme's Mem. Supp. Mot. to Dismiss Exs. 1, 2; Nour's Mem. Supp. Mot. to Dismiss Ex. 1.  These facts are not disputed by Plaintiffs.[10]

As this Court discussed previously, although Plaintiffs' Complaint is long on allegations relating to the Individual Protus Defendants' corporate involvement in the affairs of Protus, *see* Compl. ¶¶ 21, 23, 40, 41-43, 44, 48, it is entirely lacking allegations as to how the Individual Protus Defendants were *individually* responsible for the alleged wrongful conduct. Consequently, based on the allegations in the Complaint and the Individual Protus Defendants' uncontested affidavits, there is no basis for this Court to conclude that the Individual Protus Defendants should be subjected to this Court's jurisdiction because they, in their *individual* capacities: (1) "[t]ransact[ed] any business or perform[ed] any character of work or service in the State," Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1); (2) "[c]ontract[ed] to supply goods, food, services, or manufactured products in the State," *id.* § 6-103(b)(2); (3) "[c]ause[d] tortious injury in the State by an act or omission in the State," *id.* § 6-103(b)(3); or (4) "[c]ause[d] tortious injury in the State . . . by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in

--------

[10] These affidavits alone demonstrate that sections 6-103(b)(5) ("Has an interest in, uses, or possesses real property in the State"), and 6-103(b)(6) ("Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing") of Maryland's long-arm statute are clearly inapplicable.  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

the State," *id.* § 6-103(b)(4).  Any business activity conducted within Maryland was done
through Protus, and was not part of any personal action taken by the Individual Protus
Defendants.  On this point, the Individual Protus Defendants have declared that they: (1) did not
review the faxes at issue here prior to transmission and had no personal knowledge that such
faxes were being transmitted; and (2) did not specifically authorize the sending of the faxes at
issue, did not determine the fax numbers to which the faxes were sent, and had no personal
knowledge of the fax recipients' identities for the faxes at issue.  *See* Martin and Nehme's Mem.
Supp. Mot. to Dismiss Exs. 1, 2; Nour's Mem. Supp. Mot. to Dismiss Ex. 1.

In their supplemental filing submitted after briefing closed,[11] Plaintiffs have presented
answers to interrogatories given by Steven C. Eggleston ("Eggleston"), who has been sued for
violations of the Telephone Consumer Protection Act in the Superior Court for Los Angeles
County.  The interrogatory response states that:

> I [was] contacted [by] what I thought and believed to be a reputable
> company [*i.e.* Protus], which company assured me that they had a list
> of legitimate fax numbers for California Chiropractors and that it was
> in compliance with all state and federal laws . . . .  I asked them why
> they had told me their list was in compliance with California and U.S.
> law but had sent this fax to Dr. Long even though she did not approve
> its receipt.  They told me essentially that they had simply lied to me,
> that lawsuits such as this seldom occur and so they take the chance
> that nobody will file a lawsuit, and that "there are attorneys in the
> U.S. making a living filing these cases and if you just give them $500
> they will usually go away."  I pressed them for more details and they
> simply told me since they are in Canada and they cannot be
> prosecuted so they lied to me and don't care that I got in trouble for
> it.

---

[11] It should be noted that this submission, titled as a Supplement to Response to Motions
to Dismiss for Lack of Personal Jurisdiction (Paper No. 78), was impermissibly filed.  It is in all
material respects a surreply, and Plaintiffs did not seek leave of Court to file it.  *See* Local Rule
105.2.a (D. Md. 2008).

-15-

Pls.' Supp. Resp. 1-2.

This interrogatory answer, submitted in a unrelated case involving entirely different parties, does not advance Plaintiffs' contention that the Individual Protus Defendants should be individually accountable. The interrogatory answer does not even mention the Individual Protus Defendants. Nor does it contain any support for a finding that personal jurisdiction is appropriate *in Maryland* in this case—the conduct alleged by Eggleston in his interrogatory answer all occurred in California and Canada. Thus, based solely on this affidavit, it would violate due process to permit the Individual Protus Defendants to be summoned to this Court. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (explaining that a court's exercise of jurisdiction over a nonresident defendant comports with due process only if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice"). Moreover, this minimally probative interrogatory answer has been refuted by a supplemental affidavit submitted by Steve Adams, the Vice President of Marketing for Protus. Mr. Adams has declared that Eggleston is a customer of Protus, and that his account requires him to upload to Protus a list of fax numbers to which the requested fax transmission is ultimately sent. *See* Defs.' Reply 2-3. Thus, Protus does not maintain a list of "California Chiropractors" and provided no such list to Eggleston. *Id.*

Quite simply, the Individual Protus Defendants, *i.e.* Thomas J. Martin, Joseph Nour, and Simon Nehme, all of whom are Canadian citizens and none of whom has had any personal contact with the State of Maryland, are officers in a corporate entity that allegedly sent unsolicited fax transmissions into this forum in violation of Telephone Consumer Protection Act

and the Maryland Telephone Consumer Protection Act.  The Complaint is bereft of allegations upon which the Individual Protus Defendants could be held individually accountable for the actions of Protus, and the Plaintiffs have not referred this Court to any specific provision of Maryland's long-arm statute, let alone one that is applicable here.  This scenario does not permit this Court to exercise personal jurisdiction over the Individual Protus Defendants without running afoul of Maryland's long-arm statute and the Due Process Clause.

Therefore, the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendants Martin and Nehme (Paper No. 15) is GRANTED, as is the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Joseph Nour (Paper No. 45).

## II.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant Michael Jay has filed a Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, challenging this Court's subject matter jurisdiction over him under 28 U.S.C. § 1332.  Under Rule 12(b)(1), it is the plaintiff who must prove that subject matter jurisdiction exists.  *See O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) (citing *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).  In reviewing a Rule 12(b)(1) motion, factual allegations must be accepted as true and construed in the light most favorable to the plaintiff.  *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md. 2001).  A Rule 12(b)(1) motion will be granted only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond, F. & P. R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Although "federal question jurisdiction does not exist for claims brought under the [Telephone Consumer Protection Act ("TCPA")]," this Court has held that "diversity jurisdiction

remains available to private litigants under the TCPA." *Baltimore-Washington Telephone*, 584 F. Supp. 2d at 741; *see also International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1158 (4th Cir. 1997) (explaining that "jurisdiction of the United States district courts over private TCPA actions may not be premised on the general federal-question jurisdiction conferred by 28 U.S.C. § 1331").  This case has been appropriately brought pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship.

There are claims against certain Defendants in this case that exceed the $75,000 threshold required by 28 U.S.C. § 1332 (including claims against Protus for $2,147,500), but the claim against Defendant Jay in this case has been brought only by Plaintiff Powers & Powers, P.A. Powers & Powers seeks $32,500 in damages from Defendant Jay for the thirteen alleged unsolicited faxes it received by claiming $1,500 per fax under the TCPA and $1,000 per fax under the Maryland TCPA.  *See* 47 U.S.C. § 227(b)(3) (permitting "$500 in damages for each such violation," and allowing the court to award treble damages in its discretion); Maryland Ann. Code, Commercial Law Art., § 14-3202 (permitting $500 in damages for (1) "each prohibited telephone solicitation" and (2) "each prohibited practice during a telephone solicitation").  None of the other Plaintiffs in this case alleges to have received any unsolicited faxes from Defendant Jay or claims any other damages against him.

Because Powers & Powers seeks only $32,500 in damages against Defendant Jay, the claim against him does not independently meet the minimum requirements for diversity of citizenship.  Defendant Jay is correct in stating that "[t]he only basis on which Powers & Powers

-18-

has joined Michael Jay as a defendant in this action is 'permissive joinder' under Rule 20."[12]
Def.'s Mem. Supp. Mot. Dismiss 4.  In the jurisdictional statement contained in the Complaint,
Plaintiffs state that "[t]he Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any
defendants [*i.e.*, Defendant Jay] for whom any specific plaintiff does not have claims over
$75,000 in claims or in controversy."  *See* Compl. ¶ 19.  Defendant Jay argues that this Court
does not posses supplemental jurisdiction over him because he has been joined as a defendant
under Rule 20.

> Section 1332(b) of the supplemental jurisdiction statute provides as follows:

>> In any civil action of which the district courts have original
>> jurisdiction founded solely on section 1332 of this title [28 U.S.C. §
>> 1332], the district courts shall not have supplemental jurisdiction
>> under subsection (a) over claims by plaintiffs against persons made
>> parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil
>> Procedure, or over claims by persons proposed to be joined as
>> plaintiffs under Rule 19 of such rules, or seeking to intervene as
>> plaintiffs under Rule 24 of such rules, when exercising supplemental
>> jurisdiction over such claims would be inconsistent with the
>> jurisdictional requirements of section 1332 [28 U.S.C. § 1332].

28 U.S.C. § 1367(b).  The statute quite clearly prohibits this Court from exercising supplemental
jurisdiction over Defendant Jay.  Defendant Jay is a defendant joined by Rule 20, and the claims
against him amount to $32,500, which is "inconsistent with the jurisdictional requirements of
section 1332."  *Id.*

> Plaintiff Power & Powers' reliance on *Exxon Mobil v. Allapattah*, 545 U.S. 546 (2005),
is misplaced.  *Allapattah* involved two consolidated cases in which a plaintiff asserted a
jurisdictionally sufficient diversity claim against a defendant, and a second plaintiff asserted a

---

[12] Rule 20 permits permissive joinder of defendants in one action when "any question of
law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B).

jurisdictionally insufficient diversity claim against *the same defendant*.  Thus, the Supreme Court

held as follows:

> [W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of *other plaintiffs* in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

*Id.* at 549 (emphasis added).  This case, on the other hand, involves a plaintiff that has asserted a

jurisdictionally sufficient diversity claim against a defendant, and a second plaintiff that has

asserted a jurisdictionally insufficient diversity claim against *a separate defendant*.  The

Supreme Court was clear that "§ 1367(b) explicitly excludes supplemental jurisdiction over

claims against defendants joined under Rule 20."  *Id.* at 650; *see also* 16 James Wm. Moore, *et

al.*, Moore's Federal Practice § 106.45[3] ("A variation of the diversity jurisdictional-amount

issue involves the joinder of claims by a single plaintiff against two or more defendants, some of

which allege a sufficient jurisdictional amount and others that do not . . . .  The courts that have

decided this issue have uniformly held that the supplemental jurisdiction statute does not provide

supplemental jurisdiction for the insufficient claim . . . .").

   Therefore, Defendant Michael Jay's Motion to Dismiss (Paper No. 35) is GRANTED.

## III.   Non-dispositive Motions

   Plaintiffs have filed a Motion to Preserve and Protect Records (Paper No. 72), in which

they request that this Court require that Protus preserve and protect the following:

> All of your records related or regarding: (1) any fax transmissions or calls to Plaintiffs or numbers of Plaintiffs, numbers in the area codes 340, 301, 410 or 443, or to persons in Maryland; (2) any clients of Protus IP Solutions, Inc. in the five years prior to the filing date of

-20-

> this suit, including but not limited to contracts, agreements, emails, letters, graphics, fax ads, phone or fax number lists, and fax logs of any kind; (3) complaints of any kind related to the sending of faxes, and (4) all fax transmission, deletion or suppression logs.

Pls.' Mot. Preserve Records 2.  Plaintiffs have submitted the recycled affidavit of Robert Biggerstaff, which was originally filed in an unrelated case from the St. Louis (Missouri) County Circuit Court.  The affidavit states that "records in TCPA cases can and have been destroyed," and that "records [have been] lost [or] . . . intentionally destroyed . . . in cases in Georgia, South Carolina, Texas and Kansas."  *Id.* (citing Biggerstaff Aff. ¶¶ 7, 11, 13, 16, and 17).

Every litigant in this Court has the duty to preserve and protect material evidence.

*See Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation.").  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. October 22, 2003)).  A violation of this independent duty to preserve and protect material evidence comes at the risk of sanctions.  Thus, Protus has been subject to an independent duty to preserve and protect material evidence since it "reasonably anticipate[d] litigation," and that duty will continue throughout the duration of this litigation.

The Biggerstaff affidavit does not demonstrate that any additional, court-imposed duty is necessary.  The Biggerstaff affidavit, submitted four years ago in an unrelated case, contains general statements that are not particularized to this case, or even the corporate Defendant

-21-

Protus.  Although Protus was the defendant in the state court case in which the affidavit was

submitted, Biggerstaff does not even purport to identify Protus's specific document retention

policy as deficient.

In the absence of any particularized or credible threat in this case, there is no basis to

issue a court order to preserve and protect records.  Therefore, Plaintiffs' Motion to Preserve and

Protect Records (Paper No. 72) is DENIED.

Plaintiffs have also filed a Motion for Reconsideration (Paper No. 79), which is based on

this Court's Memorandum Order dated April 21, 2009 (Paper No. 76).  In that Memorandum

Order, this Court granted in part and denied in part Plaintiffs' Motion to Cancel Settlement

Conference and for Issuance of a Scheduling Order (Paper. No. 73).  After granting Plaintiffs'

request to cancel the settlement conference, this Court stated that

> In preparation for the settlement conference, Defendant Protus IP
> Solutions, Inc. was required to turn over certain confidential
> materials to Plaintiffs.  Because Plaintiffs' request to cancel the
> settlement conference is granted, Plaintiffs will also be required (1)
> to return to Protus'[s] counsel of record the confidential information
> and any copies thereof, (2) to recover and provide to Protus'[s]
> counsel of record copies of Protus'[s] confidential information
> disseminated or disclosed to others, along with a complete listing of
> all recipients of such information, and (3) to certify upon completion
> that counsel has returned to Protus'[s] counsel of record Protus'[s]
> confidential information and all copies thereof and that the listing of
> recipients is true and correct.

*See* Mem. Order 2.  Plaintiffs request that this Court reverse course and permit them to retain the

documents they received from Protus.  Plaintiffs insist that the documents turned over by Protus

for the settlement conference were not confidential, while Protus vehemently maintains that the

documents were confidential.  This Court need not resolve this dispute.  After a request by

Plaintiffs, Magistrate Judge Susan K. Gauvey ordered Protus to disclose the documents (for

attorney's eyes only) in order facilitate an early settlement conference that was requested by, and ultimately cancelled by, Plaintiffs.  This Court's alternative dispute procedures do not supply a mechanism to gain a pre-discovery tactical advantage.  The early settlement conference in this case was unfortunately unsuccessful, and neither party should receive any benefit because of that outcome.  Plaintiffs will have every opportunity, consistent with the rules of discovery, to regain access to the materials.

Consequently, Plaintiffs' Motion for Reconsideration (Paper No. 79) is DENIED.

## CONCLUSION

For the foregoing reasons: Defendants Thomas J. Martin's and Simon Nehme's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 15) is GRANTED; Defendant Michael Jay's Motion to Dismiss (Paper No. 35) is GRANTED; Defendant Joseph Nour's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 45) is GRANTED; Defendant Protus's Motion to Expedite Resolution of Its Emergency Motion to Stay Production of Documents (Paper No. 62) is MOOT; Plaintiffs' Motion to Preserve and Protect Records (Paper No. 72) is DENIED; Plaintiffs' Motion for Reconsideration (Paper No. 79) is DENIED; and Defendant Protus's Motion to File Sur-Reply to Plaintiffs' Motion to Reconsider (Paper No. 85) is GRANTED.

Therefore, Defendants Thomas J. Martin, Simon Nehme, Michael Jay, and Joseph Nour are DISMISSED from this case.  This Court will issue a scheduling order as to Defendants Protus IP Solutions, Inc., Sunstar Travel and Tours, Inc., and Joseph D. Hanna, as these Defendants have filed Answers to Plaintiffs' Complaint.  Plaintiffs are instructed to move for judgment under Rule 55(b) of the Federal Rules of Civil Procedure as to Defendants The Marvin

Group, LLC, Tommy Farmer, Neil Scott Luxenberg, and DNA Staffing Services, Inc.

A separate Order follows.


Date: July 1, 2009                                      /s/_____
                                                        Richard D. Bennett
                                                        United States District Judge