IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Hobby Works, Inc.<br>14300 Cherry Lane Court, Suite 101<br>Laurel, MD 20707 | \* |
| Steven Berry<br>20 Courthouse Square, Suite 214<br>Rockville, MD 20850 | \* |
| James J. Temple, Jr., P.A.<br>4701 Leeds Avenue<br>Baltimore, MD 21227 | \* |
| Mallon A. Snyder, Chtd.<br>107 North Adams Street<br>Rockville, MD 20850 | \* |
| David Reile<br>1001 N. Noyes Drive, Suite B<br>Silver Spring, MD 20910 | \* |
| Martin Sterenbuch<br>8736 Preston Place<br>Chevy Chase, MD 20815 | \* |
| Towne Silversmith, Inc.<br>932 Hungerford Drive, Suite 10-B<br>Rockville, MD 20850 | \* |
| John R. Garza<br>17 West Jefferson Street<br>Rockville, MD 20850 | \* |
| Jeff Morrison<br>1014 Whispering Oak Dr.<br>Bardstown, KY 40004 | \* |
| Plaintiffs | \* |
| v. | \* Case No. 295412 |
| PROTUS IP SOLUTIONS, INC.<br>2379 Holly Lane<br>Ottawa, Ontario<br>Canada K1V7P2 | \* COMPLAINT AND JURY DEMAND |
| Serve: JOSEPH NOUR, REGISTERED AGENT<br>2435 Holly Lane | \* |



EXHIBIT A

| | |
|---|---|
| Ottawa, Ontario | * |
| Canada K1V7P2 | * |
| | * |
| Defendant | * |

## COMPLAINT

Plaintiffs, Hobby Works, Inc., Steven Berry, James J. Temple, Jr., P.A., Mallon A. Snyder, Chtd., David Reile, Martin Sterenbuch, and Towne Silversmith, Inc., John R. Garza and Jeff Morrison, through counsel, Stephen H. Ring, and Stephen H. Ring, P.C., file this suit against Defendant Protus IP Soluctions, Inc.

### I. Parties and Jurisdiction

1. At all times relevant to this action Plaintiff Hobby Works, Inc. was a corporation engaged in business in Montgomery County, Maryland.

2. At all times relevant to this action Plaintiff Steven G. Berry was an individual maintaining offices and engaged in business in Montgomery County, Maryland.

3. At all times relevant to this action Plaintiff James J. Temple, Jr., P.A. was a professional corporation engaged in business in Baltimore, Maryland.

4. At all times relevant to this action Plaintiff Mallon A. Snyder, Chtd. was a professional corporation maintaining its principal offices and engaged in business in Montgomery County, Maryland.

5. At all times relevant to this action Plaintiff David Reile was an individual maintaining offices and engaged in business in Montgomery County, Maryland.

6. At all times relevant to this action Plaintiff Martin Sterenbuch was an individual maintaining offices and engaged in business in Montgomery County, Maryland.

7. At all times relevant to this action Plaintiff Towne Silversmith, Inc. was a corporation engaged in business in Montgomery County, Maryland.

8. At all times relevant to this action Plaintiff John R. Garza was an individual maintaining offices and engaged in business in Montgomery County, Maryland.

9. At all times relevant to this action Plaintiff Jeff Morrison was an individual maintaining offices and engaged in business in Montgomery County, Maryland.

10. At all times relevant to this action Defendant Protus IP Solutions, Inc. was a Canadian corporation maintaining its offices in Ottawa, Canada, engaged in business in the United States and in Montgomery County, Maryland. Upon information and belief, Protus derives most of its revenue from customers in the United States. Protus is in the business of fax broadcasting, and at all times relevant to this action transmitted thousands of advertisements via facsimile into Montgomery County, Maryland per month.

11. Subject matter jurisdiction exists under §4-201 and §4-401 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

12. General and specific personal jurisdiction over all parties exists under §6-103(b)(1) -(b)(3) and -(b)(4) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

13. Venue is proper under §6-201 and §6-202 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

## II. The Telephone Consumer Protection Act

14. To curtail unwanted telemarketing calls and the transmission of unwanted advertisements via facsimile the U.S. Congress enacted 47 U.S.C. §227, known as the Telephone Consumer Protection Act, and certain amendments effective July 9, 2005 under the "Junk Fax Prevention Act of 2005." The JFPA is not retroative.

3

15. The TCPA prohibits the use of any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine by a person within the United States, to any telephone facsimile machine. The prohibited act is sending, regardless of success of any printing at the receiving end. The term "telephone facsimile machine," as defined in the TCPA, means equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper. The term "unsolicited advertisement" under the TCPA means any material advertising the commercial availability or quality of any property, goods, or services, which is transmitted to any person without that person's prior express invitation or permission.

16. The TCPA creates a private cause of action for unsolicited facsimiles, and provides for monetary damages in the amount of actual damages or $500 per violation, whichever is greater. Upon a finding that a defendant's conduct was willful or knowing, the court may increase the award to an amount not to exceed $1,500 per violation.

17. The applicable period of limitations under the TCPA is four years pursuant to 28 U.S.C. §1658.

### III. The Maryland Telephone Consumer Protection Act

18. The Maryland Telephone Consumer Protection Act ("MD-TCPA;" Md. Code. Ann. Com. Law §14-3201 et seq.) expressly incorporates the TCPA and provides additional remedies. Specifically, the MD-TCPA provides, "A person may not violate: (1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or (2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal

Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L)." The MD-TCPA thus treats violations of the cited federal statutes and regulations as violations of the MD-TCPA.

19. The MD-TCPA further provides for recovery of reasonable attorney's fees and damages in the amount of $500 for each violation, or actual damages, whichever is greater. Specifically, §14-3202(a) provides, "A violation of this subtitle is an unfair or deceptive trade practice . . . and is subject to the enforcement and penalty provisions contained in Title 13 of this article;" and §14-3202(b) provides, "In addition to the remedies provided in § 13-408 of this article, an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover: (1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation."

20. As an unfair or deceptive trade practice, a violation of the MD-TCPA entitles a plaintiff to damages under § 13-408 (a part of the Maryland Consumer Protection Act), which provides in relevant part: "(a) In addition to . . . any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title. (b) Attorney's fees.- Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees." Thus, the Maryland Consumer Protection Act and the MD-TCPA in combination create a separate cause of action and entitlement to damages, in addition to any entitlement to damages under the federal statutes or regulations.

21. The MD-TCPA expressly provides that each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation of the statute. Md. Code. Ann. Com. Law §14-3202(c).

### IV. Allegations

22. Defendant caused harm in Maryland, as alleged in more detail below.

23. Defendant created a computer software and hardware system specifically designed to process and transmit high volumes of facsimiles via a process known as "facsimile broadcasting;" enticed and encouraged customers to use its system for the mass dissemination of advertisements via facsimile as an inexpensive marketing technique; provided assistance and guidance to its customers in the preparation and submission of their advertisements; maintained and enhanced the software and hardware so that it would efficiently receive, process and transmit thousands of advertisements via facsimile on a daily basis; and provided "deletion request" services to its customers for the predictable and expected flood of complaints from recipients of unsolicited faxes. The hardware, software and services described above in this paragraph are referenced below as the "Protus fax transmission system" or "Protus' system."

24. On a regular, persistent basis over the past four years or longer, Defendant has promoted the Protus system via its website on the Internet, and via marketing representatives sometimes known as "affiliates." Upon information and belief, during the past four years or longer, Protus has been represented by affiliates or marketing representatives located in Maryland, and/or who promote Protus' system in Maryland.

25. On a regular, persistent basis over the past four years or longer, Defendant offered the Protus system to persons in Maryland, entered contracts with persons in Maryland for the Protus system, and received payment from persons in Maryland for use of the Protus system.

26. On a regular, persistent basis over the past four years or longer, Defendant used the Protus system to transmit thousands of advertisements per month to persons in Maryland, and to persons in Montgomery County. On a regular, persistent basis over the past four years or longer, Defendant assisted others in the use of the Protus system to transmit thousands of advertisements per month to persons in Maryland, and to persons in Montgomery County.

27. On a regular, persistent basis over the past four years or longer, Defendant derived substantial revenue as a result of the transmission of faxes to persons in Maryland and in Montgomery County via the Protus system.

28. Upon in formation and belief, Plaintiffs allege that during the past four years or longer Defendant's primary business has been the transmission of advertisements to facsimile numbers via the Protus system; that during this time most of the faxes sent via the Protus system were sent to facsimile numbers in the United States; and that during this time most of Defendant's revenue has been derived from the use of the Protus system to send advertisements to facsimile numbers in the United States.

29. At all times relevant to this action Defendant knew that its practices entailed the transmission of unsolicited advertisements via facsimile. Any doubt as to the unsolicited nature of the transmissions, or as to the advertising nature of the content, was eliminated by the large volume of complaints and deletion requests from thousands of fax recipients. Defendant was also aware of the content of the advertisements submitted by its customers for transmission via the Protus system. Defendant was significantly involved in the sending of the transmissions for purposes of liability under the TCPA, federal regulations, and the MD-TCPA.

30. Defendant's customers, who sought an inexpensive means to advertise, relied on Defendant's superior knowledge and understanding of its fax broadcasting system in deciding to

7

use the system. Defendant was aware that its conduct, and that of its customers, in using the Protus system, might be considered illegal under laws applicable within the United States. In order to shield its customers from liability, Defendant agreed to conceal their identities.

31. Some of Defendant' customers knew that the transmission of their advertisements via Protus' fax broadcasting system might result in civil liability, and nevertheless elected to engage Defendant to process and transmit advertisements via fax broadcast. Because of their awareness that their conduct was likely illegal, Defendant' customers wished to remain anonymous and requested Defendant to conceal their identities. Defendant has attempted to comply with this request, with full knowledge that the transmissions were likely in violation of laws applicable within the United States.

32. Plaintiffs allege in the alternative that Defendant acted carelessly and recklessly in sending the transmissions, or in causing them to be sent, or in becoming significantly involved in the transmissions, without having determined that express prior invitation or permission was obtained from the intended recipients. In some instances, Defendant carelessly and recklessly relied on implausible representations from its customers that prior consent had been obtained from the intended recipients, without obtaining any further verification of that consent. In other instances, Defendant carelessly failed to obtain any indication whatsoever, from anyone, that prior consent had been obtained from the intended fax recipients.

33. Defendant caused thousands of advertisements to be transmitted to Plaintiffs' facsimile numbers in Maryland on dozens of dates during 2004, 2005, 2006, 2007 and 2008. The following is a small sample of some of the specific dates of some of the transmissions: In 2005: January 19, February 8, March 2, 9, 16, May 3, June 21, July 18, September 20, 28, October 3, 5, 6, 14, 17, 18, 28, November 2, 8, 30, December 5, 6, 8, 9, 14, 19; In 2006: January

3, 10, 19, February 2, 6, 8, 27, March 2, 14, April 18, May 2, 5, 18, 24, June 22, 26, July 5, 6, September 27; and other dates in 2004, 2005, 2006, 2007 and 2008 too numerous to list here. In some instances transmissions were sent to the same recipient several times in the same day or during the same week. The content of these transmissions consisted of advertisements promoting the commercial availability or quality of vacation packages, health insurance plans, life insurance plans, penny stocks, and numerous other products, services and opportunities. All of these transmissions were sent without Plaintiff's prior invitation or permission, in violation of the TCPA and the MD-TCPA. Each facsimile image that was sent constituted a separate occurrence.

34. Defendant's software generated records of the transmissions, which Defendant had the ability to preserve. These records include the date, time and duration of each transmission, and the sending and target facsimile numbers. Defendant are on notice to preserve these records by virtue of this suit and by virtue of prior complaints and TCPA litigation. Defendant are also on notice to preserve all records in any way related to the transmissions and their content, including all aspects of planning, execution, follow-up and payment for related services.

35. Some of the transmissions caused Plaintiffs' facsimile machines to print hard copies, and some of these hard copies have been preserved. The claims in this suit are not limited to the hard copies that have been preserved, but include all transmissions of the faxes at issue sent by Defendant to all of the plaintiffs' facsimile numbers. The best evidence of these transmissions is likely to be Defendant's transmission logs and similar records.

36. The advertisements included a telephone number for the recipient to call for more information or for purposes or purchasing the advertised products. These telephone numbers are referenced herein as "sales numbers."

37. Calls to the sales numbers were answered at "call centers" operated by, or under contract to, Protus' customers. Upon information and belief, the personnel answering these calls were intentionally kept unaware of Protus' involvement in the fax transmission of the advertisements, or were instructed to deny any such knowledge.

38. Most of the advertisements also listed telephone numbers that recipients could call to request that the practice of faxing the advertisements to their fax numbers be terminated "deletion numbers". Upon information and belief, some of these deletion numbers were provided to Protus' customers by Protus, its agents, or entities affiliated with Protus. Upon information and belief, Protus or its agents also offered to Protus' bulk fax customers, and provided to some of those customers and to others, the service of receiving and processing deletion requests received via the deletion numbers.

39. Defendant intentionally omitted its name and contact information from the templates for fax headers created by its software, and from all other information contained in the faxes, in order to conceal its identity. When printed on the recipient's fax machine, the fax headers normally appear in the first line of each fax, and include fields labeled, "From," "To" and other fields including places for insertion of the date and time of transmission. This header information is printed by the receiving fax machine under the control of signals transmitted by the sender. The Protus system permits transmissions with no headers, or with headers having incomplete or missing fields.

40. Plaintiffs seek recovery under the TCPA and the MD-TCPA for all of the unlawful transmissions of Advertisements to Plaintiffs' facsimile numbers, not limited to the advertisements that may be produced as examples, and not limited to advertisements that were printed on recipients' facsimile machines and preserved in hard copy.

10

41.     The fax transmissions at issue in this case are all transmissions of advertisements sent to Plaintiffs' facsimile numbers via Defendant's facsimile broadcasting system from the date four years prior to the filing of this suit, until the date of entry of a final, non-appealable judgment as to the claims of each plaintiff.

42.     Plaintiffs' facsimile numbers were included in the databases used for the fax transmissions at issue.

43.     Defendant caused facsimile broadcasts of advertisements containing various content, various sales numbers, and various opt-out numbers, during 2004, 2005, 2006, 2007 and 2008, to Plaintiffs' facsimile numbers and to the facsimile number of thousands of other persons, without the recipients' prior express invitation or permission.

44.     Defendant can identify the transmissions sent to Plaintiffs by reference to various records including records of Defendant's communications with its customers, the content submitted by the customers, the dates of the fax campaigns, contracts with customers, quantities of faxes sent on particular dates as shown by the price charged by Defendant and the amounts paid by the customer, other records, and by reference to Plaintiffs' facsimile numbers.

45.     Plaintiffs' facsimile numbers are as follows:

Hobby Works, Inc. : 301-725-6040; 301-725-5769; 703-426-1609; 410-838-1129; 301-468-6305.

Steven Berry: 301-309-1217

James J. Temple, Jr., P.A.: 410-247-9388

Mallon A. Snyder, Chtd.: 301-762-7509

David Reile: 301-587-7890

Martin Sterenbuch: 301-365-5644

Towne Silversmith, Inc.: 301-251-8596

John R. Garza: 301-309-6432; 301-294-6159; 301-294-6158; 301-424-4775

46. Plaintiff alleges in the alternative that Defendant believed that prior express permission or invitation had been obtained from the recipients, and caused the transmissions to be sent carelessly and recklessly, without verification that prior express invitation or permission had been obtained.

47. Some portions of Defendant' conduct in participating in, causing, authorizing or ratifying the transmissions were knowing and willful, and some were negligent. Defendant's conduct was knowing and willful as to some of the transmissions, and reckless as to others.

48. The transmissions invaded Plaintiffs' rights of privacy, consumed Plaintiffs' paper and toner and occupied Plaintiffs' facsimile machines, rendering them temporarily unusable for Plaintiffs' business purposes. The transmissions consumed Plaintiffs' personnel work time, and interfered with Plaintiffs' business operations.

49. All persons and entities who participated in any aspect of the transmissions were acting as agents of Defendant.

50. Plaintiffs seek the greater of actual damages or statutory damages, as the evidence at trial may demonstrate.

## Count I - TCPA

51. The allegations above are incorporated by reference.

52. Defendant violated the TCPA.

## Count II - MD-TCPA

53. The allegations above are incorporated by reference.

54. Defendant violated the MD-TCPA.

## Relief Sought

Wherefore, Plaintiffs, Hobby Works, Inc., Steven Berry, James J. Temple, Jr., P.A., Mallon A. Snyder, Chtd., David Reile, Martin Sterenbuch, and Towne Silversmith, Inc., John R. Garza and Jeff Morrison seek damages against Protus IP Soluctions, Inc. as follows:

a) for violations of the TCPA that were not the result of willful or knowing conduct, $500 per violation. Each plaintiff claims 100 such violations, and therefore each plaintiff seeks $50,000.

b) for violations of the TCPA that were the result of willful or knowing conduct, $1,500 per violation. Each plaintiff claims 100 such violations, and therefore each plaintiff seeks $150,000.

c) for violations of the MD-TCPA, $500 per violation. Each plaintiff claims 100 such violations, and therefore each plaintiff seeks $50,000 under the MD-TCPA, in addition to the damages claimed above.

d) costs and attorney's fees under the MD-TCPA; and

e) such other and further relief as the court deems just.


STEPHEN H. RING, P.C., by

*[signature]*

Stephen H. Ring
20300 Seneca Meadows Parkway, Suite 200
Germantown, Maryland 20876
MD Bar Id. No. 04731764
Telephone: 301-540-8180

Attorney for Plaintiffs

### Jury Demand

Plaintiff respectfully requests a trial by jury as to all issues so triable.

/s/ Stephen H. Ring