IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| AGV SPORTS GROUP, INC., et al., | * |
| Plaintiffs, | * |
| vs. | *   Civil Action 1:08-CV-03388-RDB |
| PROTUS IP SOLUTIONS, INC., et al., | * |
| Defendants, | * |

\* \* \* \* \* \*

**DEFENDANT PROTUS IP SOLUTIONS, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO QUASH SUBPOENA**

This Reply Memorandum is filed by Defendant Protus IP Solutions, Inc. ("Protus") in support of its Motion to Quash Subpoena.

**INTRODUCTION**

Plaintiffs' motive is self-evident. They do not want to comply with this Court's November 3, 2009 Protective Order. Plaintiffs want the documents and information protected from disclosure by the Ontario Business Records Protection Act ("OBRPA") and the Canadian Personal Information Protection and Electronic Documents Act ("PIPEDA"), yet they do not want to follow the appropriate procedures allowing disclosure set forth under these laws. This Court has unambiguously held that Protus need not disclose this information until Plaintiffs follow these procedures.

Instead, Plaintiffs have developed a strategy to challenge or evade this Court's Protective Order. For example, Plaintiffs moved the Court to reconsider its Protective Order, repeating the same arguments as before and presenting a misleading account of the history of discovery in an unrelated case. Plaintiffs also served a subpoena *duces tecum* on attorney Stephen H. Ring, Esq. in the same unrelated case against Protus, attempting to force him to disclose confidential and protected information

in violation of court orders. Plaintiffs have now initiated a smear campaign in an effort to discredit Protus' counsel, launching a series of *ad hominem* attacks against them and falsely claiming that Protus is delaying the discovery process in this case. This Court should reject these unseemly tactics, enforce its Protective Order, and quash Plaintiffs' subpoena.

## ARGUMENT

### A. The Vast Majority Of The Documents Sought By Plaintiffs' Subpoena *Duces Tecum* Are Protected By Court Orders.

Plaintiffs served a subpoena *duces tecum* on Mr. Ring commanding him to produce "[a]ll documents, including substantive Interrogatory Answers or Responses, and deposition transcripts, that your office received in discovery in the case *Hobby Works, Inc. et al. v. Protus IP Solutions, Inc.*, Case # 2008-CV-01618-DKC." (Ex. B.) As explained in Protus' Memorandum, Plaintiffs' subpoena would require Mr. Ring to violate the Hobby Works Protective Order, which was stipulated to by the parties and entered by the Honorable Charles B. Day, United States Magistrate Judge. (See Ex. F.) Protus relied on this order and designated many of its documents, discovery responses, and deposition transcripts as "Confidential" and "Confidential – Attorneys Eyes Only." Documents in Mr. Ring's possession that are designated confidential are protected from disclosure. The subpoena would also require Mr. Ring to violate his obligation to the Canadian court not to use information received pursuant to the PIPEDA order "for any purposes other than those of the proceeding in which the evidence or information was obtained." (Ex. E.) Plaintiffs cavalierly dismiss these facts, stating that they are not bound by the Hobby Works Protective Order, OBRPA, or PIPEDA. This reflects Plaintiffs' complete disregard for the obligations imposed by these court orders.

Plaintiffs do not seem to care that their subpoena *duces tecum* undeniably seeks documents and information protected by the Hobby Works Protective Order – at the same time recognizing that the Hobby Works Protective Order is a valid and enforceable court order. Plaintiffs state in their Opposition

that this Court must decide whether their subpoena served on Mr. Ring, which Plaintiffs mistakenly refer to as "a Court order," "takes precedence over a stipulated protective order entered in this same Court." (Pls.' Opp'n at 8.) It does not.

Plaintiffs offer no legal authority allowing their subpoena to take "precedence" over the Hobby Works Protective Order. And Plaintiffs fail to address the case law cited in Protus' Memorandum: Mona Vie, Inc., LLC v. Amway Corp., No. 08-CV-02464 WDM KLM, 2009 WL 524938 (D. Col. Mar. 2, 2009). In Mona Vie, the defendant subpoenaed two non-parties calling for the production of information that was subject to a stipulated protected order in an earlier case. The plaintiff filed a motion to quash the subpoena, which the district court granted, stating:

> [T]he Court has serious concerns about the effect of the Protective Order entered by the District of Utah on the discovery sought by Defendant's subpoenas . . . The Court does not believe that it is appropriate for Defendant to attempt to circumvent the protections provided in the Protective Order by attempting to obtain Plaintiffs' privileged and/or confidential documents from SM&P. Indeed, in United Nuclear, the court noted that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . [and] a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation.

Id. at *4. The court held, consistent with the ruling of the Tenth Circuit in United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424 (10th Cir. 1990), that the court entering the stipulated protective order had the sole discretion to modify it, and requests for documents produced in the prior litigation must be taken up with that court. Id. at *5.

Here, Plaintiffs are attempting to circumvent the protections afforded under the Hobby Works Protective Order by way of their subpoena in this case. To comply fully with this subpoena, Mr. Ring would have to violate the Hobby Works Protective Order and disclose protected information.[1] This

---

[1] Plaintiffs concede that Protus' trademark and technical information is protected from disclosure. They are not seeking this type of information. (Pls.' Opp'n at 6.)

1176703                                                    3

would undermine the purpose of protective orders, which "allow parties to make full disclosure in discovery without fear of public access to sensitive information" so as to promote the overriding goals of the Federal Rules of Civil Procedure. United Nuclear Corp., 905 F.2d at 1427. Such orders should not be disregarded, and only the court entering the order possesses the authority to modify it. Id. As such, the documents designated by Protus as confidential under the Hobby Works Protective Order cannot be disclosed in this case pursuant to Plaintiffs' subpoena.[2] Plaintiffs would need to seek relief from the Hobby Works Protected Order from Judge Day.

Plaintiffs are further attempting to undermine the Canadian court's OBRPA and PIPEDA orders. The Hobby Works Protective Order protects documents and information produced by Protus to Mr. Ring pursuant to the OBRPA and PIPEDA orders, such as documents identifying Protus' customers and their purchase history. The OBRPA order authorizes and requires Protus to produce documents for the sole purpose of providing them to the Hobby Works plaintiffs, who requested such documents. (Ex. C at 2.) Similarly, according to the PIPEDA order,

> **NO INFORMATION** shall be disclosed by Protus to Respondents pursuant to this Order unless and until the Respondents sign an undertaking confirming that they will abide by the provisions of the deemed undertaking rule as established under Rule 30.1.01(3) of the Rules of Civil Procedure, R.R.O. 1990, Reg. 194, whereby the Respondents undertake not to use the evidence or information to which this Order applies for any purposes other than those of the proceeding in which the evidence was obtained.

(Ex. D at 2.) Mr. Ring signed such an Undertaking, agreeing to use the information obtained under the PIPEDA order only in that case. (Ex. E.) Plaintiffs argue that Mr. Ring would not have to violate this agreement because he would not be using the documents "for any purpose at all. He would simply be responding to a lawful subpoena." (Pls.' Opp'n at 4.) This is disingenuous. To comply fully with

---

[2] Contrary to Plaintiffs' contention, Protus does not bear the burden to prove that all documents it seeks to protect are confidential and proprietary. The Hobby Works Protective Order expressly allows the parties to designate documents as confidential, and any party can contest such confidential designation and seek relief from the court. (Ex. F at 2, 7-8.)

Plaintiffs' subpoena, Mr. Ring would be forced to produce the protected information outside the <u>Hobby Works</u> case. This is in direct violation of the Undertaking (and the Canadian Rules of Civil Procedure) which Mr. Ring signed, as required by the Canadian court.

Plaintiffs' improper attempt to receive all of Protus' protected documents – in complete disregard for the Hobby Works Protective Order, OBRPA, and PIPEDA – proves that Plaintiffs simply want to conduct discovery at others parties' time and expense. Plaintiffs do not want to follow the procedures set forth under OBRPA and PIPEDA, and their disagreement with this Court's Protective Order is manifest throughout their Opposition. Indeed, Plaintiffs complain about enduring the "expensive and lengthy process in another Country to obtain materials that, as noted above, are already here in Maryland,' and "the great costs" of obtaining discovery information that is "already right here in Maryland waiting to be used." (Pls.'s Opp'n at 3, 7.) This Court should not reward Plaintiffs' tactics and should quash Plaintiffs' subpoena.

    **B.    Plaintiffs' Request For Every Document Received By Mr. Ring In Discovery Is Overly Broad and Irrelevant.**

Plaintiffs' subpoena requesting every document received by Mr. Ring is, on its face, overly broad and irrelevant. The seven Plaintiffs in this case are different from the nine plaintiffs in the <u>Hobby Works</u> case and, therefore, not all the same facsimiles are at issue in both cases. It is unknown at this point which customers of Protus, if any, sent facsimiles advertisements to Plaintiffs in this case. The files maintained by Protus on more than thirty of its customers – including private information protected by Canadian law – were produced in <u>Hobby Works</u> and are encompassed by Plaintiffs' subpoena. Plaintiffs do not purport to limit the discovery sought to, for example, facsimile transmissions to Plaintiffs or communications between Protus and customers that transmitted facsimiles to Plaintiffs. Plaintiffs' request for every single document received by Mr. Ring necessarily encompasses a vast quantity of documents that cannot conceivably be relevant in the instant matter, such as documents

related to the Hobby Works plaintiffs, documents related to facsimile transmissions to the Hobby Works plaintiffs, and documents related to the customers alleged to have utilized Protus' technology to transmit facsimiles to the Hobby Works plaintiffs but not implicated in this case. These documents obviously have no relationship to the claims asserted by Plaintiffs. Plaintiffs' subpoena is not reasonably calculated to lead to the discovery of admissible evidence.

### C. Plaintiffs' *Ad Hominem* Attacks On Protus' Counsel Are Unfounded And Further Reflect Plaintiffs' Motive.

In its Memorandum, Protus stated that the Hobby Works case was brought by nine completely different plaintiffs and would therefore involve an entirely different *set* of facsimiles. (Protus' Mem. at 1). Plaintiffs declare this statement to be a "knowingly false assertion," a "falsehood," and a "lie." (Pls.' Opp'n at 3, 7.) Plaintiffs purportedly identified 10 facsimiles (out of the 868 allegedly received by Plaintiffs) that were identical or similar to faxes at issue in the Hobby Works case. But Protus never claimed that each of the facsimiles was different. Protus merely stated that this case involves an entirely different *set* – or group – of faxes than the Hobby Works case. Plaintiffs' accusation to the contrary is baseless.[3] It is beyond cavil that each facsimile transmission in this case is different from each facsimile transmission at issue in the Hobby Works case because transmissions in each case involve different recipients. Because Plaintiffs' claims necessarily require determination on a fax-by-fax basis, discovery similarly should be limited to that which is relevant only to the particular facsimile transmissions at issue. To the extent there is any overlap of a fax image or sender, Plaintiffs will obtain such discovery

---

[3] Plaintiffs also contend that Protus could have compared the thousands of faxes at issue in both cases. This would have taken a considerable amount of time. Protus was informed of the Ring Subpoena on Tuesday, November 24, 2009 – immediately before Thanksgiving. Because Protus feared that Mr. Ring would divulge Protus' protected information to Plaintiffs, Protus quickly filed its Motion to Quash on Sunday, November 29, 2009.

in response to their discovery requests in this case. Anything beyond that is unreasonably burdensome, harassing, and irrelevant.

Plaintiffs also argue that Protus is unreasonably delaying discovery in this case, and they attack the honesty and integrity of Protus' attorney Mary Ann L. Wymore, Esq., suggesting that the Court "should take into consideration her candor and the reliability of her assertions . . . when evaluating the pending Motion to Reconsider." (Pls.' Opp'n at 4.) Plaintiffs make these accusations in the hope that this Court will grow impatient with Protus and vacate its Protective Order. But any unreasonable delay in discovery in this case can be attributed to the actions of Plaintiffs and their counsel. They have stubbornly refused to agree to any protective order to safeguard Protus' confidential and proprietary information. (See Pls.' Opp'n at 5) (Plaintiffs "have refused Protus' requests in this case to agree to a similar [protective] order) (Pls.' Opp'n at 8) ("Plaintiffs do and will not stipulate to a protective order as the Hobby Works plaintiffs did.") Protus' counsel sent their proposed protective order to Plaintiffs' counsel back on February 22, 2009, and again on September 2, 2009. (See e-mails from Protus' counsel to Michael C. Worsham, attached as Exhibit G.) Despite requests by Protus' counsel, Plaintiffs' counsel has not made any attempt to negotiate the terms or substance of this proposed order. And Plaintiffs have stubbornly refused to follow the procedures under OBRPA and PIPEDA, pursuant to this Court's Protective Order. Instead, Plaintiffs have chosen to litigate this issue over and over again, forcing Protus and its counsel to spend time and money briefing this argument and wasting judicial resources. Had Plaintiffs sought an OBPRA order from the Canadian court back in early November, it is possible that Plaintiffs would have received it by now, and Protus could be producing such documents. But Plaintiffs have chosen a different strategy. They seek this information without having to follow this Court's Protective Order. Any delays in this case have been caused – not by the following of procedures – but by Plaintiffs' adamant and obstinate refusal to follow the rules.

## **CONCLUSION**

For all of these reasons, Protus respectfully requests that the Court enter an order quashing the subpoena served by Plaintiffs on Stephen H. Ring, Esq. and for such other and further relief as this Court deems just and proper.

Dated:  January 4, 2010               Respectfully submitted,

/s/ Mary Ann L. Wymore
Mary Ann L. Wymore (*Pro Hac Vice*)
mlw@greensfelder.com
Ryan J. Gavin (*Pro Hac Vice*)
rjg@greensfelder.com
GREENSFELDER, HEMKER & GALE, P.C.
10 S. Broadway, Suite 2000
St. Louis, Missouri  63102
Telephone:  (314) 241-9090
Facsimile:  (314) 345-5465

Dana W. McKee
dwm@browngold.com
120 E. Baltimore Street, Suite 1700
Baltimore,  MD  21202-6701
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869

*Attorneys for Defendant Protus IP Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of January, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

                                  /s/ Mary Ann L. Wymore