Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division)

```
AGV SPORTS GROUP, INC.,    )
et al.,                    )
                           )
           Plaintiffs,     )
vs.                        )  Civil Action
                           )  1:08-CV-03388-RDB
PROTUS IP SOLUTIONS, INC., )
et al.,                    )
                           )
           Defendants.     )
```

DEPOSITION OF RICHARD ZELMA

July 27, 2011

Florham Park, New Jersey


EXHIBIT A

```
 1                      I N D E X

 2    EXAMINATION BY       DIRECT CROSS REDIRECT RECROSS

 3    MR. GAVIN:                  5            87

 4    MR. WORSHAM:                    57            92

 5

 6

 7

 8                      E X H I B I T S

 9    NUMBER           DESCRIPTION                    PAGE

10    EX-1 to          Documents                       16

11    EX-7

12

13         NOTE: Exhibit 7 is withdrawn on page 49.

14

15                   (Exhibits retained.)

16

17

18

19

20

21

22

23

24

25
```

1    A.    Any of the events when I called
2  Protus would be either on the day or shortly after I
3  received the fax.
4    Q.    Well, and I asked because I see
5  November of 2006, February 2007 and April 2007.
6    A.    These are all Allied?
7    Q.    Yes.
8    A.    I would have called probably after
9  the last one, because if they were going to stop
10 there was no sense in calling.
11   Q.    So you would have collected these
12 faxes either in that period of several months and
13 then the calls that you described for me happened
14 sometime after the last fax?
15   A.    That's correct.  After the last
16 Allied fax.
17   Q.    Correct.
18   A.    Okay.
19   Q.    And I forgot to ask you with respect
20 to Exhibit 2, do you have any understanding as to
21 whether this Exhibit 2 or the advertiser who sent
22 Exhibit 2 has any connection to the facsimiles that
23 are at issue in the lawsuit filed by the plaintiffs
24 represented by Mr. Worsham for which we're taking
25 your deposition for today?

1       A.      That I don't know.

2       Q.      Okay.  And I would essentially ask
3  the same thing with respect to the Allied Roofing
4  faxes, do you know whether those would have any
5  connections to the claims asserted by the plaintiffs
6  in the Maryland lawsuit that we're taking your
7  deposition for today?

8       A.      I have no idea.

9       Q.      You have no knowledge of any
10 relationship one way or the other?

11      A.      No.

12      Q.      We've marked as Exhibit 4, appears to
13 be an email string, so I ask you to tell me what
14 that is.

15      A.      This is a, for one of my other cases.
16 This is a phone company, one of these resellers of
17 phone service.  These, some of these numbers are
18 identified on those faxes and I was trying to find
19 out who was behind the numbers, and basically what
20 the phone company is, and Ms. Pinkerton provided me
21 with a phone all used by a client named Kenergy
22 Communications in Orlando, Florida.

23              This is also part of another case,
24 one of my other cases, and it seems that the first
25 toll-free number is actually the number on that

1  Q.  Powers & Powers, have you ever heard
2  of them?
3  A.  Never heard of them.
4  Q.  Intelligent Devices?
5  A.  No.
6  Q.  Gibbons Collision Repair?
7  A.  No.
8  Q.  Baltimore Podiatry Group?
9  A.  I don't know them.
10 Q.  And you never had any communications
11 with any representatives of any of those
12 companies?
13 A.  No.
14 Q.  Have you reviewed any of the faxes at
15 issue in this case?
16 A.  In this case?
17 Q.  Yes.
18 A.  The Maryland case?
19 Q.  Maryland case.
20 A.  No.
21 Q.  And when I say "this case," I'm
22 referring to the Maryland case that we Subpoenaed
23 you in.
24 A.  Right, no, I've never seen anything.
25 Q.  And you don't know anything about the

1    claims asserted by those plaintiffs?
2         A.    No.
3         Q.    And you don't know anything about the
4    faxes that are the subject of those claims?
5         A.    When you say you don't know anything
6    about the faxes, can you be more specific?
7         Q.    Well, I mean if there's something
8    that you think you know about the faxes, tell me
9    what it is.
10        A.    Only the allegation is that they were
11   sent by Protus but that's all I know.
12        Q.    Right.  You don't personally know
13   anything about those faxes?
14        A.    No.
15        Q.    And you can't sit here today and tell
16   me on whose behalf any of those faxes were
17   transited?
18        A.    I didn't see them.
19        Q.    You can't tell me whether they were
20   send via Protus' broadcast system?
21        A.    How would I know that?
22        Q.    Well, then is that a no then?
23        A.    It's a no.
24        Q.    I'm just trying to make sure I have
25   a clear record as to what you know because you've

1   been disclosed as someone who might testify in this
2   case.
3       A.      Yes.
4       Q.      But you don't know anything about
5   those faxes that are the subject of this lawsuit?
6       A.      I've not seen the faxes, no.
7       Q.      And you don't know who the
8   advertisers are who sent those faxes?
9       A.      No, never saw them.
10      Q.      Do you know whether Protus ever
11  supplied any of those plaintiffs' fax numbers to any
12  advertiser?
13      A.      Let me see if I understand the
14  question.  Do I know if Protus supplied --
15      Q.      Take Martin Pasco, for example.  Do
16  you know if Protus ever supplied Martin Pasco's
17  number to any advertiser that sent a fax?
18      A.      That I don't know.
19      Q.      And the same would be true for all
20  plaintiffs?  You don't know?
21      A.      I don't know.  That's correct.
22      Q.      I'm going to review my notes?
23              MR. GAVIN:  Mr. Worsham, do you have
24  any questions?
25              MR. WORSHAM:  Yes, I have quite a few