IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARTIN PASCO, *et al.* | * |
| Plaintiffs, | * |
| v. | * Civil Action No.: RDB-08-3388 |
| PROTUS IP SOLUTIONS, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

This is an "unsolicited fax" action brought pursuant to the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, and the Maryland Telephone Consumer

Protection Act ("Maryland TCPA"), Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, by a

group of five Plaintiffs: (1) Martin Pasco; (2) Baltimore Podiatry Group, Drs. Scheffler &

Sheitel, P.A.; (3) Givens Collission Repair Center, Inc.; (4) Intelligent Devices, Inc.; and (5)

Powers & Powers, P.A. (collectively "Plaintiffs").   Plaintiffs contend that they received

unsolicited facsimile advertisements sent by the Defendant Protus IP Solutions, Inc., now

known as j2 Global Canada, Inc., carrying on business as Protus IP Solutions ("Protus").[1]

---

[1]  Defendants The Marvin Group, LLC, Tommy Farmer, Neil Scott Luxenberg, and DNA Staffing
Services, Inc. never filed an answer after having been served with process.  Consequently, an Order
of Default has been entered as to those four Defendants.  *See* ECF Nos. 28, 29, 30, 41, and 100.
This Court dismissed Defendants Thomas J. Martin, Joseph Nour, Simon Nehme, and Michael Jay
for lack of personal jurisdiction by Memorandum Opinion and Order dated July 1, 2009.  *See* ECF
Nos. 86 and 87.   Subsequently, this Court dismissed Defendants Joseph D. Hanna and Sunstar
Travel and Tours, Inc. for lack of subject matter jurisdiction.  *See* ECF Nos. 138 and 139.

Pending before this Court are Plaintiffs' and Defendant Protus' cross-motions for summary judgment (ECF Nos. 212 and 230).[2]  This Court has reviewed the record, as well as the pleadings and exhibits, and conducted a hearing on October 14, 2011 pursuant to Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Defendant's Motion for summary judgment (ECF No. 212) is GRANTED IN PART and DENIED IN PART, and the Plaintiffs' Motion for Summary Judgment (ECF No. 230) is DENIED.

## BACKGROUND

The Telephone Consumer Protection Act provides that "[i]t shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," and creates a private right of action to allow recipients of unsolicited fax ads to sue the senders. 47 U.S.C. §§ 227(b)(1)(C); § 227(b)(3).  The TCPA provides that a person or entity bringing suit may recover "for actual monetary loss from such a violation, or to receive $500 in damages for each such violation."  *Id.* § 227(b)(3)(B).  Moreover, if a court finds that a defendant willfully or knowingly violated the TCPA by sending unsolicited fax advertisements, the court may, in its discretion, treble the amount of damages to $1,500.  *Id.* § 227(b)(3)(C).  In creating a private right of action, the TCPA authorizes a plaintiff to file suit "if otherwise permitted by the laws or rules of court of a State . . . in an appropriate court of that State."  *Id.* § 227(b)(3).  The TCPA was passed by Congress to combat the

---

[2]   Defendant previously filed a motion to dismiss and supporting memorandum that substantially overshot this Court's page limitations (ECF No. 208).  By Letter Order dated August 17, 2011 (ECF No. 211), this Court denied the parties joint motion for leave to file excess pages.  As a result, the Defendant thereafter filed a Corrected Motion for Summary Judgment to meet page limitations (ECF No. 212).  Accordingly, ECF No. 208 will be denied as moot insofar as ECF No. 212 is the operative motion for summary judgment.

effects of "junk faxes," namely the "depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone line." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005). Similarly, the Maryland TCPA provides that a person may not violate the federal TCPA, and allows for $500 per violation and reasonable attorney's fees.

On December 17, 2008, the Plaintiffs filed a three count Complaint against Protus, a Canadian corporation located in the province of Ontario, alleging violations of the TCPA and its state analog, the Maryland TCPA. At issue are approximately 357 individual fax advertisements that were sent to, and received by the Plaintiffs. Both parties seek summary judgment as to all of the faxes at issue—while the Plaintiffs argue that Protus is liable for every fax at issue, Protus argues that many of the faxes at issue were not sent by Protus, and with respect to faxes that may have been sent by the company, it is not liable for a variety of different reasons.

Specifically, Protus argues that certain of the faxes at issue are time barred; that Protus' own transmission data rules out certain faxes; that the corporate Plaintiffs lack standing under the Maryland TCPA; that the Plaintiffs cannot recover damages under both the federal TCPA and the Maryland TCPA; and that Protus cannot be held liable under Count III of the Plaintiffs' Complaint insofar as the Telemarketing Sales Rule does not apply to fax broadcasters. Aside from arguing about specific faxes, Protus also argues that it cannot be held liable for any of the faxes at issue insofar as Protus merely broadcasts advertisements for its customers, and is therefore not the "sender" of those faxes. Finally, Protus argues that the federal TCPA and the Maryland TCPA are both unconstitutional.

3

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert denied*, 540 U.S. 822 (2003); *see also HavePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

## ANALYSIS

As a preliminary matter, this Court notes that with respect to the matter of pure liability, both parties' motions for summary judgment fail. In other words, at this stage in the litigation, there are genuine issues of material fact that preclude granting summary judgment against either party. However, as will be discussed below, the parties have raised numerous legal issues, the resolution of which will help narrow the dispute and crystalize the issues for trial. Accordingly, this Court will begin its analysis by identifying the genuine issues of material fact that preclude granting summary judgment. Next, this Court will consider the Defendant's arguments as to why it may not be held liable for any of the faxes at issue, and will then consider the specific legal arguments regarding particular faxes at issue. When all is said and done, this case boils down to a simple question—how many unsolicited fax advertisements can the Plaintiffs *prove* were sent by Protus?—a question that must necessarily be resolved at trial.

## I.  Issues of Material Fact Preclude Summary Judgment as to Liability

As evidenced in the briefing, and as candidly acknowledged by Protus at the hearing held on October 14, 2011, the single best way to determine whether a particular fax at issue was sent using Protus' fax transmission system, is to match the fax against Protus' own transmission data.  Starting on January 1, 2007, Protus began saving transmission data that records identifying information on every fax it transmits.  Protus forcefully argues that "the absence of a matching transmission record demonstrates conclusively that there was not a transmission over Protus' network to a Plaintiff . . ." and that in the absence of such matching transmission data, a "fax at issue could not have been sent over Protus' system." Def.'s Mem. at 15, ECF No. 213-1.  However, because Protus is a Canadian corporation, early in this litigation the company sought a protective order directing the Plaintiffs to comply with certain Canadian statutes regulating the production of information such as its transmission data.  This Court granted Protus' request, and directed Plaintiffs to comply with two Canadian statutes before seeking transmission data from the Defendant.  *See* November 3, 2009 Mem. Op., ECF No. 108.

The Plaintiffs apparently never sought the requisite Canadian court order, and consequently have no transmission data on which to support their claims that Protus sent them the unsolicited faxes at issue in this litigation.  Instead, the Plaintiffs seek to impose TCPA liability on Protus on the ground that the faxes received by the Plaintiffs all share common features that can be definitively linked to Protus.  Specifically, the Plaintiffs argue that all of the faxes sent over Protus' system contain a unique "header" style that includes fields such as "to," "from," "time," "date," and "page number." *See* Pls.' Mot. Summ. J. at 3,

ECF No. 230; Pls.' Reply at 7, ECF No. 254.  In addition, the Plaintiffs claim that Protus includes on faxes toll-free opt out or "removal" numbers in order to comply with the TCPA. *See* Pls.' Mot. Summ. J. at 3.  Plaintiffs argue that a fax that contains a particular header style, in combination with a toll-free removal number subscribed to by Protus can definitively prove a fax was sent over Protus' system.[3]

By contrast, Protus argues that header styles and toll-free removal numbers are insufficient and not determinative of whether a particular fax was sent by Protus.  Protus claims that it uses "off-the-shelf" software to construct the faxes it sends—in other words, Protus contends that it does not manipulate the headers, and therefore, any other entity can purchase the same software and create similar headers.  *See* Def.'s Opp'n at 21, ECF No. 241.  While Protus does not identify any particular entity that does use similar headers, it argues it is possible, and that summary judgment cannot be granted on the basis of header styles alone.  With respect to the toll-free removal numbers, Protus similarly argues that that information is insufficient to match a fax to Protus.  Protus argues that it is not uncommon for customers to utilize the fax broadcast services of multiple companies—so the removal number might be associated with Protus, but the fax itself could have been sent by another entity.  *Id.* at 22-23.  In this vein, Protus points out that certain faxes alleged by Plaintiffs to have been sent by Protus, and that contain removal numbers maintained by Protus, can be

---

[3]  Plaintiffs attempted to support this argument with the affidavit of Richard Zelma, who is not a party to this litigation.  Mr. Zelma is an attorney who has had previous success (as both a plaintiff and attorney) in suing Protus for violations of the TCPA.  In his affidavit, Mr. Zelma essentially speaks to his ability to recognize Protus faxes based on their headers, other characteristics, and his previous suits against the company.  However, in his deposition, Mr. Zelma admitted that he had not reviewed a single fax that is at issue in this case, and Protus moved to strike Mr. Zelma's affidavit on the ground that it was not based on personal knowledge.  After hearing argument at the hearing conducted on October 14, 2011, this Court granted the Protus' motion to strike, and Mr. Zelma's affidavit has been stricken.  Oct. 17, 2011 Order, ECF No. 283.

definitively ruled out on the basis of the transmission data that Protus keeps.  Protus has identified 79 faxes that it argues could not have been sent through its system because it has no matching data.  In short, Protus has set forth evidence and affidavits supporting its argument that distinct header styles and removal telephone numbers are insufficient to definitively link faxes to Protus.  Of course, Protus has not claimed that it did not send any of the faxes at issue—only that the Plaintiffs' purported proof is insufficient to support a finding of summary judgment in their favor.

Plaintiffs' argument that all of Protus' faxes contain identifiable headers and removal telephone numbers, without more, is insufficient to support their claim for summary judgment.  Protus has offered affidavits casting doubt on the Plaintiffs theory, and has presented evidence that Protus could not have sent some of the faxes at issue.  The issue of whether a particular fax was sent by Protus is a factual issue that must be resolved by the jury.  *See Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) (holding that conflicting affidavits raised genuine issues of material fact).  In short, because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) genuine issues of material fact preclude this Court from granting summary judgment to the Plaintiffs on the matter of liability.

While Protus has not moved for summary judgment generally on the ground that it did not send any of the faxes at issue, it has moved for summary judgment regarding the 79 faxes it contends could not have traversed its system.  *See* Def.'s Mem. at 15-16.  Protus argues that it has a record of every fax transmission sent over its system from January 1,

2007 to the present.  It argues that because it has no records of the 79 faxes, those faxes could not possibly have been sent by Protus.[4]

On this point, Plaintiffs only argue that Protus' transmission data (really the absence of transmission data) is not reliable.  Plaintiffs argue that because Protus did not independently "seek . . . call detail records from its telecommunications providers, which could be used to check against Protus's own internal transmission data," the evidence is somehow "unreliable hearsay".  Pls.' Mem. at 24, ECF No. 230-1.  Plaintiffs miss the mark with this argument.  Rule 56 of the Federal Rules of Civil Procedure contains no mandate that affidavits be supported by information from separate third parties, and the absence of such information is not sufficient to create a genuine issue of material fact.  As previously noted, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001).

Accordingly, because Plaintiffs have offered no evidence supporting their position, Protus is entitled to summary judgment with respect to the 79 faxes at issue for which it does not have transmission data.  Protus' arguments for summary judgment as to the remainder of the faxes at issue will be discussed in the following sections.

---

[4]  Importantly, Protus has not disclosed any of its transmission data, which this Court previously held was subject to Canadian statutes regulating discovery.  *See* November 3, 2009 Mem. Op., ECF No. 108.  Instead, Protus has represented that these 79 faxes are ruled out as a result of the *absence* of any transmission data kept by Protus.

## II.  The Telephone Consumer Protection Act is Constitutional

Protus devotes the majority of its motion for summary judgment to its argument that the TCPA and the Maryland TCPA are unconstitutional.  Indeed, over 25 pages of its 49 page brief attack the constitutionality of these statutes.  In this regard, Protus' strategy is unavailing insofar as no federal circuit court or state supreme court has held the TCPA to be unconstitutional despite numerous similar challenges.  Indeed, only one court, the United States District Court for the Eastern District of Missouri, has found any portion of the TCPA to be unconstitutional—and that case was subsequently reversed on appeal by the United States Court of Appeals for the Eighth Circuit.  *See Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 196 F. Supp. 2d 920 (E.D. Mo. 2002), *rev'd by* 323 F.3d 649 (8th Cir. 2003).  Protus, with two brief exceptions,[5] has apparently chosen to ignore the plethora of cases—both state and federal—addressing and rejecting the very same arguments made by Protus regarding the constitutionality of the TCPA.[6]  Nevertheless, Protus' Motion for Summary Judgment attacks the constitutionality of the TCPA on three grounds.  First, Protus argues that the statutory damage provisions under the TCPA, which provides for damages of $500 to $1,500 per unsolicited fax, are grossly disproportionate to any possible harm and violate the Fifth

---

[5]  Protus, in arguing that the TCPA runs afoul of the First Amendment to the United States Constitution briefly argues that the two federal circuit courts to consider the issue decided it incorrectly.  *See* Def.'s Mem. at 34-35 (discussing *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) and *Destination Ventures Ltd. v. FCC*, 46 F.3d 54 (9th Cir. 1995)).

[6]  *See, e.g., Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003), *cert. denied, Fax.com, Inc. v. Missouri ex rel. Nixon*, 540 U.S. 1104 (2004); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54 (9th Cir. 1995); *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673, at *5-6 (N.D. Ill. Feb. 1, 2010); *Centerline Equip. Corp. v. Banner Personnel Serv.*, 545 F. Supp. 2d 768, 777-78 (N.D. Ill. 2008); *Accounting Outsourcing*, 329 F. Supp. 2d 789, 809 (M.D. La. 2004); *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1165 (S.D. Ind. 1997).

Amendment's Due Process clause and constitute an excessive fine under the Eighth Amendment.  Second, Protus argues that the TCPA violates the First Amendment because it is unnecessarily restrictive of protected commercial speech.  Finally, Protus argues that the TCPA is unconstitutionally vague.  Each of these arguments will be addressed in turn.

## A.  Fifth and Eighth Amendment Challenges

### i.  Fifth Amendment

Protus argues that the damages provisions in the TCPA and the Maryland TCPA "violate due process guarantees of the Fifth Amendment because they are grossly disproportionate to any harm that may be suffered by a plaintiff."  Def.'s Mem. at 24.  The TCPA provides that a person may recover "actual monetary loss from such a violation, or receive . . . $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  Moreover, the TCPA contains a provision whereby, in its discretion, the court may treble the damages if it concludes that the Defendant acted willfully or knowingly.  *Id.* Similarly, the Maryland TCPA provides that a person may not violate the federal TCPA, and allows for $500 per violation and reasonable attorney's fees.  MD. CODE ANN., COM. LAW §§ 14-3201 - 3202  Protus argues that, with modern technology, the actual cost of receiving a fax is "pennies per page," and therefore the statutory damages ($500 - $1500) afforded under the TCPA are between 25,000 and 75,000 times greater than the actual costs associated with receiving a fax.  In making this argument, Protus relies primarily on *State Farm Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003) and *BMW of North America v. Gore*, 517 U.S. 559 (1996), for the proposition that due process is implicated when damage awards exceed a single-digit ratio between compensatory and punitive damages.  Def.'s Mem. at 25-27.

Those cases, however, are inapposite for two related reasons.  First, *Campbell* and *Gore*, dealt with large *punitive* damage awards imposed by juries, and not *statutory* damages.  Second, as the United States District Court for the Middle District of Louisiana, in a case construing the constitutionality of the TCPA, noted:

> At the heart of the Court's ruling in [*Campbell* and *Gore*] was the concern that persons receive fair notice regarding the nature and severity of the punishment inflicted upon them.  In contrast to those cases, which involved damages awards set by juries, the TCPA . . . impose[s] statutory damages.  Consequently, Defendants can hardly complain they had no fair notice regarding the severity of the potential punishment.  This court refuses to extend the holdings of *Gore* and *Campbell* beyond their intended application.

*Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 808-09 (M.D. La. 2004).  That court went on to hold that "the civil damages provisions of the TCPA . . . satisf[ies] due process."  *Id.* at 810.  Indeed, numerous courts have found the damages provisions of the TCPA to be constitutional and have flatly rejected the precise argument made by Protus.[7]  *See, e.g.*, *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673, at *5-6 (N.D. Ill. Feb. 1, 2010); *Centerline Equip. Corp. v. Banner Personnel Serv.*, 545 F. Supp. 2d 768, 777-78 (N.D. Ill. 2008); *Accounting Outsourcing*, 329 F. Supp. 2d at 809; *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1165 (S.D. Ind. 1997).

In light of the breadth of case law upholding the constitutionality of the TCPA's damages provisions, and the complete non-existence of cases to the contrary, this Court

---

[7]  Protus, whose counsel is experienced in TCPA litigation has failed to note that other courts have rejected the arguments it now presents to this Court.  Under the Maryland Rules of Professional Conduct, applicable to this Court pursuant to Local Rule 704, parties are *not* obligated to disclose adverse legal authority if that authority is not controlling on this Court.  However, Protus' approach is troubling.  It is one thing to argue that other courts analyzed the issues incorrectly, but quite another to disregard entirely well-reasoned judicial opinions running contrary to the Defendant's position.

need not dwell overly long on this argument.  In short, while statutory damages are not entirely immune to due process challenges, statutory penalties violate due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919).  Moreover, the Court in *Williams* noted that States "possess a wide latitude of discretion" to "prescribe penalties for violations of their laws," and those penalties, which often serve a deterrent effect, are to be "considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence . . . ." *Id.*

Courts to consider the issue have identified numerous public harms addressed by the TCPA, including the unquantifiable losses, such as cost-shifting from advertiser to recipient and business interruptions, associated with junk faxes.  *See, e.g.*, *Accounting Outsourcing*, 329 F. Supp. 2d at 808; *American Blastfax*, 121 F. Supp. 2d at 1090; *see also* H.R. Rep. 102-317, at 11 (1991).  Because the Maryland TCPA mandates that a person may not violate the federal TCPA, it regulates the same conduct, and addresses the same public harms.  In *Williams*, the Supreme Court stated that statutory damages designed to address such "public wrongs" are not required to be "confined or proportioned to [the plaintiff's] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the legislature may adjust its amount to the public wrong rather than the private injury."  251 U.S. at 66.  Therefore, because the TCPA's statutory damages need not be proportional to the cost associated with unsolicited faxes, Protus' due process argument is unavailing.  Accordingly, this Court finds

that the statutory penalties under the TCPA are not "obviously unreasonable" and are not "so severe and oppressive" as to violate due process. *Williams*, 251 U.S. at 66.

Finally, Protus argues that even if this Court finds the TCPA's damages provisions to be constitutional on their face, it may alternatively consider an "as applied" challenge. In other words, Protus makes the case that even if $500 - $1500 in statutory damages are constitutional, an aggregate award, taking account of hundreds of unsolicited faxes, could easily reach into the millions, and could therefore violate due process. Although Protus cites no cases for this argument, two other courts to consider such an argument have concluded that should such an aggregate award be so excessive as to violate due process, the remedy would simply be a reduction of the damage award. *See Centerline Equip.*, 545 F. Supp. 2d at 778 (remedy is reduction of damages, not dismissal of claim). In *Texas v. American Blastfax, Inc.*, the district court found that it would be inequitable to award $500 for the approximately one million faxes sent by the defendant company, and instead awarded seven cents per violation. 164 F. Supp. 2d 892, 901 (W.D. Tex. 2001). Because issues of material fact preclude summary judgment as to the total number of faxes sent, it is premature to consider whether a hypothetical damage award in this case would accord with due process.

*ii. Eighth Amendment*

Protus devotes considerably less space to its Eighth Amendment argument, and for good reason. While Protus contends that the TCPA's damages provisions constitute an "excessive fine" under the Eighth Amendment, the Excessive Fines clause only applies to civil damages when the government is prosecuting the case or will receive a share of the damages. *See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264-65

(1989) ("fine" means "payment to a sovereign as punishment for some offense").  Because "[t]he damages provided by the TCPA are paid to individual plaintiffs, not the government . . . the TCPA's damages provision does not amount to a 'fine' under the Eighth Amendment."  *Green*, 2010 WL 431673, at *5.

## B.  First Amendment Challenge

In addition to challenging the constitutionality of the TCPA's damages provisions, Protus argues that the TCPA violates the First Amendment because it is unnecessarily restrictive of protected commercial speech.   Again, Protus largely ignores the numerous cases finding the TCPA to withstand constitutional muster,[8] and instead has chosen to repeat the precise arguments that have failed repeatedly in every court to consider the argument.   However, Protus' main points will be briefly addressed, and consistent with virtually every other court to consider the issue, this Court concludes that the TCPA does not run afoul of the First Amendment.

Constitutional challenges to restrictions on commercial speech are evaluated under the test set forth by the Supreme Court in *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557 (1980).   If the government seeks to restrict commercial speech that is lawful and not misleading,[9] the Plaintiffs must show that: (1) the asserted governmental interest is substantial; (2) the restriction on speech directly advances that interest; and (3) the restriction is not more extensive than necessary to serve that interest. *Id.* at 566.

---

[8]  *See supra* note 7.

[9]  The First Amendment does not protect commercial speech that is misleading or that concerns unlawful activity.  *See Central Hudson*, 447 U.S. at 566.

On the first prong of the *Central Hudson* analysis, numerous courts have recognized the substantial governmental interests addressed by the TCPA, including the unquantifiable losses, such as cost-shifting from advertiser to recipient, and the attendant business interruptions associated with receiving junk faxes. *See, e.g.*, *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09-C-1541, 2010 WL 431673 (N.D. Ill. Feb 1, 2010); *Centerline Equip. Corp. v. Banner Personnel Service*, 545 F. Supp. 2d 768 (N.D. Ill. 2008); *Accounting Outsourcing, LLC v. Verizon Wireless*, 329 F. Supp. 2d 789 (M.D. La. 2004); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003), *cert. denied*, *Fax.com, Inc. v. Missouri ex rel. Nixon*, 540 U.S. 1104 (2004); *Texas v. Am. Blast Fax, Inc.*, 159 F. Supp. 2d 936 (W.D. Tex. 2001); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54 (9th Cir. 1995); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162 (S.D. Ind. 1997).

Protus argues that regardless of whether the government had a substantial interest in preventing the cost shifting and the business interference and interruptions associated with receiving unwanted fax advertisements in 1991, due to the reduction in the costs of modern fax methods, there exists no substantial interest today.  Relying on *Brown v. Board of Education*, Protus argues that "[t]he government 'cannot turn the clock back' to justify the constitutionality of a statute by asserting an interest that no longer exists."  Def.'s Mem. at 35 (quoting *Brown v. Bd. of Educ.*, 347 U.S. 483, 492 (1954)).  However, this argument is unavailing.  Just last year, the United States District Court for the Northern District of Illinois confronted this same argument and concluded that:

> Although advances in technology may have made the processing of unwanted facsimiles less costly, the Supreme Court recognizes a property interest even if the property "lacks a positive economic or market value." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 169 (1998). This was premised on the "longstanding recognition that property . . . consists of the group of rights which the . . . owner exercises in him dominion of the physical thing," *Id.* at 170. The importance of the government's interest, therefore, remains unchanged despite technological advancements.

*Green*, 2010 WL 431673, at *2 n.1.

Moreover, as noted by the Superior Court of the District of Columbia in 2003, some twelve years after Congress passed the TCPA, modern faxes that are managed by servers and delivered by electronic mail still have the capability of tying up and disrupting even large business faxing operations. *See Covington & Burling v. Int'l Marketing & Research, Inc.*, No. 01-4360, 2003 WL 21384825, at *3 (D.C. Super. April 17, 2003) ("the critical fact is that Covington's fax server was unavailable to receive or transmit other faxes"). Accordingly, this Court concludes that the government has a substantial interest in avoiding the cost shifting and attendant business interruptions associated with receiving unwanted fax advertisements.

The next question this Court must address, after finding the government's interest substantial, is whether the restriction on speech directly advances that interest. Protus argues that because the TCPA prohibits only commercial (as opposed to noncommercial) unsolicited faxes, the TCPA does not directly advance the governmental interests. In other words, Protus contends that because the cost shifting and business disruptions are the same whether the faxes at issue contain commercial advertisements or noncommercial newsletters, the TCPA's ban on only commercial faxes is unconstitutional. For this proposition, Protus relies on *City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993). In *Discovery Network*, the

Supreme Court considered whether the city of Cincinnati, in the name of preserving sidewalk safety and ameliorating "visual blight," could prohibit commercial newsracks, but not newspaper newsracks. *Id.* at 412-14. The Court concluded that because commercial newsracks were as dangerous and aesthetically displeasing as newspaper newsracks, the ordinance at issue "b[ore] no relationship whatsoever to the particular interests that the city ha[d] asserted," and the ordinance was therefore an impermissible means of responding to the city's legitimate interests. *Id.* at 424-25. Protus argues that the TCPA's distinction between commercial and noncommercial faxes similarly bears no relationship to the government's asserted interests, and therefore suffers from the same constitutional infirmity.

However, in enacting the TCPA, Congress specifically distinguished between commercial and noncommercial faxes and sought to limit only the faxes found to be most obtrusive—commercial advertisements. *See* H.R. Rep. 102-317, at 10-13 (1991). As the Eighth Circuit concluded, commercial advertisements "constitute the bulk of all . . . unsolicited faxes," and "[t]here is no reason to doubt that Congress . . . believed . . . that noncommercial faxes did not present the same problem as commercial faxes and therefore distinguished between them." *Am. Blast Fax*, 323 F.3d at 655-58.

Protus also argues that the TCPA does little to advance governmental interests insofar as it is "fatally pierced by exemptions and inconsistencies." Def.'s Mem. at 40. Relying on *Greater New Orleans Broadcasting Association v. United States*, 527 U.S. 173 (1999), Protus contends that because the TCPA does not restrict telephone advertising, which it maintains is more costly and disruptive, it is inconsistent and therefore unconstitutional. In *Greater New Orleans*, the Supreme Court concluded that a statute prohibiting certain

advertisements for private casino gambling was unconstitutional because the statute was riddled with exemptions for Native American tribes and charities.  *Id.* at 187.  However, the TCPA does not *exempt* telephone advertising from some broader regulatory scheme— instead, Congress chose only to prohibit conduct that it documented as being problematic. As noted by the court in *Green*, "Congress was not required to also limit speech that it did not deem problematic."  2010 WL 431673, at *3 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 799 n.7 (1989)).  Accordingly, because Congress legitimately concluded that unwanted faxes cause different harms than do unwanted telephone calls, it could constitutionally differentiate between the two advertising mediums.

The final prong of the *Central Hudson* analysis requires that the TCPA be not more restrictive than necessary.  447 U.S. 566.  Citing *Thompson v. Western States Medical Ctr.*, Protus argues that if the government can "achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so."  535 U.S. 357, 371 (2002). Specifically, Protus argues that a national "no-fax" list would be less restrictive and more workable than the current system, and is therefore a preferred restriction.  However, while a "no-fax" list might be slightly less restrictive, it would put the burden on fax recipients to contact the sender or place their number on the list.  More importantly, in the context of commercial speech, the government is not required to implement the absolutely least restrictive measures, but must ensure a reasonable and proportional fit between the restriction and the government's interests.  *See Bd. of Trs. Of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 476-78 (1989); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995).  In addition, and unmentioned by Protus is the fact that the TCPA does not completely ban unsolicited

fax advertising—rather, unsolicited fax advertising is allowed so long as the sender has a preexisting relationship with the recipient.  Moreover, the TCPA does nothing to prohibit advertisers to contact consumers through means other than unsolicited faxes.  Accordingly, this Court finds that the TCPA is not more extensive than necessary, and is therefore constitutional under the rubric of *Central Hudson*.

## C.  Vagueness Challenge

As a final constitutional attack on the TCPA, Protus argues that some of the law's provisions are so ambiguous and vague as to violate the Due Process guarantees of the Fifth Amendment.  Specifically, Protus argues that the language of the TCPA does not clearly define the term "unsolicited advertisement," and therefore does not make clear what activities are prohibited under the law.  As the Supreme Court has explained, due process "bars enforcement" of a statute that uses "terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application."  *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  The thrust of Protus' argument is that the above language is vague insofar as "it is often difficult to distinguish between commercial and non-commercial content."  Def.'s Mem. at 45.  More specifically, Protus argues that under the TCPA it is unclear whether "an ambitious high school band using fax advertising for its car wash or candy sale fundraiser has made those goods or services 'commercially available.'  Nor is it clear whether fax advertising for a charitable event sponsored by a company in part to promote good will for its products or services falls within the realm of the TCPA's sweeping provisions."  *Id.*

At the outset, this Court notes that Protus' void for vagueness constitutional challenge is, by necessity, a facial one.   The actual faxes at issue in this case are unquestionably the type of unsolicited advertisements prohibited by the TCPA.  As noted by the Supreme Court "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *see also Accounting Outsourcing*, 329 F. Supp. 2d at 807.  Accordingly, this Court will consider Protus' vagueness challenge a facial one.

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  Like every court to consider the issue, this Court does not find any of those terms impermissibly vague.  As noted by the United States District Court for the Middle District of Louisiana:

> The detailed definition of "unsolicited advertisements" set forth in the TCPA clearly distinguishes between commercial and noncommercial facsimiles. Simply put, the TPCA only prohibits those facsimiles which advertise goods, property, or services.[ ]  The hypothetical situations put forth by Defendants which allegedly illustrate the vagueness of the "unsolicited advertisements" provision can all be easily resolved by referring to § 227(a)(4).  Faxes involving charitable events, an essay contest for children, political messages, and consumer warnings simply do not have anything to do with advertising goods, property, or services.  Persons of common intelligence would not have to guess at the meaning of this provision of the TCPA.

*Accounting Outsourcing*, 329 F. Supp. 2d at 808.

In short, this Court has no difficulty concluding that the TCPA articulates its aims "with a reasonable degree of clarity" so as to reduce the risk of arbitrary enforcement and

enable individuals to conform their behavior to the requirements of law.  *Roberts v. United States*, 468 U.S. 609, 629 (1984).

### III.  Fax Broadcaster Liability Under the Telephone Consumer Protection Act

Protus argues that because it is merely a "fax broadcaster" and not the true "sender" of the faxes in question, it cannot be held liable for any of the faxes in this case.  In other words, Protus contends that it is only a conduit through which its customers, the true senders of the content, send faxes.  In this vein, Protus argues that because it did not have a "high degree of involvement" in sending any of the faxes at issue, it cannot be liable under what has become known as the facsimile broadcaster defense.

The legislative history of the TCPA indicates that its Senate drafters may have intended the law to only apply to the "originator or controller" of unwanted faxes, and not to the "common carrier or other entity that transmits the call or message."  S. Rep. No. 102-178, at 7 (1991).  However, the actual text of the TCPA does not make this clear—the TCPA simply provides that it is "unlawful for *any person* . . . to use any telephone or facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  The Plaintiffs have seized on this language in arguing that because the faxes at issue were technically sent through Protus' faxing software, Protus is the true sender and is necessarily liable for any unwanted faxes sent over its system.

This Court has previously noted that, after passing the TCPA, "Congress granted the [Federal Communications Commission ("FCC")] authority to prescribe regulations to implement the requirements of [the TCPA]."  *Baltimore-Washington Telephone Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 743 (D. Md. 2008).  In exercising its rulemaking authority

over the years, the FCC has defined a facsimile broadcaster as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." 47 C.F.R. § 64.1200(f)(6).  On the other hand, a "sender" is "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." *Id.* § 64.1200(f)(8).  The FCC's regulations also provide that "[a] facsimile broadcaster will be liable for violations of paragraph (a)(3) of this section . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." *Id.* § 64.1200(a)(3)(vii).  Accordingly, Protus argues that it is not the "sender" of the faxes at issue and is only a fax broadcaster without the attendant "high degree of involvement" necessary to impute liability on the company.

While the Plaintiffs do argue that Protus has the requisite level of involvement, they devote most of their resources to attacking the FCC's authority to exempt certain actors from the TCPA's prohibitions.  *See* Pls.' Mem. at 26-30.  However, this argument is misplaced.  As the Fourth Circuit has noted, in situations where a statute grants broad rulemaking authority to an agency, "such regulations are presumptively valid and will be sustained so long as [they are] reasonably related to the purpose of the enabling legislation." *Harman Mining Co. v. United States Dep't of Labor*, 826 F.2d 1388, 1390 (4th Cir. 1987).  More specifically, in situations where the statute is silent or ambiguous with respect to the specific issue, under *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), this Court must afford substantial deference to a federal agency's statutory interpretation.  *Id.* at 843-45.  In this regard, the agency's interpretation of a statute "need not be the best or most

natural one by grammatical or other standards," but instead it "need be only reasonable to warrant deference." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991) (citations omitted); *see also Bridgestone/Firestone, Inc. v. Pension Ben. Guaranty Corp.*, 892 F.2d 105, 110 (D.C. Cir. 1989) ("[a]s long as the agency's [construction of the statute] is consistent with the language and purpose of the statute, [the Court] must defer to the agency's interpretation"). Because this Court concludes that the FCC's regulations construing the TCPA are based on a permissible construction of the statue and are reasonable, the issue becomes whether Protus engaged in a "high degree of involvement" in sending the faxes at issue.

In evaluating this question, courts have generally extended liability to companies that transmit faxes on behalf of customers. In *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000), the court rejected the defendant's invocation of the fax broadcaster exception and concluded that because the company's "business center[ed] around using a fax machine to send unsolicited advertisements—the precise conduct outlawed by the TCPA," the company "[wa]s more than a common carrier or service provider [because it] maintain[ed] and use[d] a database of recipient fax numbers, actively solicit[ed] third party advertisers and presumably review[ed] the content of the fax advertisements it sen[t] . . . [and was therefore] more than a mere conduit for third party faxes." *Id.* at 1089-90.

In the present case, Protus maintains that it does not have the requisite high degree of involvement in sending the faxes at issue. Protus contends that it does not supply fax numbers to its customers, does not create fax content, does not advise its customers regarding the legality of any faxes, and that it has no knowledge whether any faxes that traverse its system are unsolicited. On the other hand, the Plaintiffs argue that because some

of them received the same fax ads from "completely unconnected advertiser businesses across different and unconnected industries," Protus must have been involved in supplying fax numbers to their customers—perhaps by referring its customers to third parties who provide fax numbers and assist in designing content.  While the Plaintiffs evidence is thin, it is nonetheless sufficient to preclude a grant of summary judgment in favor of Protus.  The issue of Protus' involvement in sending the faxes at issue is a genuine issue of material fact that must be resolved at trial.

Accordingly, although Protus meets the definition of "fax broadcaster" under the FCC's regulations, the amount and extent of the company's involvement in sending the faxes at issue is a factual issue to be resolved by the jury at trial.  If, as Protus contends, the company is found to have had virtually no involvement in determining fax content or providing fax numbers, then Protus would be successful in asserting a broadcaster defense.  On the other hand, if it is determined by the jury that Protus did indeed have a high degree of involvement in sending the faxes at issue, the jury may return a verdict for the Plaintiffs.[10]

## IV.  Equitable Tolling and the Statute of Limitations

The statute of limitations for federal TCPA claims is four years.  *See* 28 U.S.C. § 1658(a) (federal "catch-all" limitations statute providing that an "action may not be commenced later than four years after the cause of action accrues"); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  The Maryland TCPA carries a three year

---

[10]  At trial, the parties may submit proposed instructions for this Court's instruction on the fax broadcaster defense.

statute of limitations.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101.[11]  Under federal law,

"a cause of action accrues when the plaintiff possesses sufficient facts about the harm done

to him that reasonable inquiry will reveal his cause of action."  *Battle v. Seibels Bruce Ins. Co.*,

288 F.3d 596, 604 (4th Cir. 2002) (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)).

Under Maryland law, "a plaintiff's cause of action accrues when the plaintiff knows or has

reason to know of the wrong."  *Brown v. Neuberger, Quinn, Gielen, Rubin & Gilber, P.A.*, 731 F.

Supp. 2d 443, 449 (D. Md. 2010) (citations omitted).  This so-called "discovery rule" is

"premised on discovery of the harm," and the plaintiff need "not be aware of the extent of

the harm, the source, or other intimate details of the tort."  *Id.*

Here, under both the federal and Maryland TCPAs, it is clear that the Plaintiffs' cause

of action accrued when they received an unsolicited fax advertisement—that is, as soon as

they knew or should have known of the alleged harm to them in receiving an unsolicited fax

advertisement.  However, in an apparent issue of first impression, the Plaintiffs argue that

claims arising under the TCPA can be equitably tolled under a discovery theory.  Essentially,

Plaintiffs argue that because they could not have known about Protus' specific involvement

in the sending of the faxes at issue, their claims should be equitably tolled until they could

have known of Protus' involvement.  Moreover, Plaintiffs argue that this Court should also

---

[11]   During the course of this litigation, the Plaintiffs argued that that the Maryland Telephone Consumer Protection Act was a statutory "specialty" law with a statute of limitations of twelve years under Section 5-102(a)(6) of the Maryland Courts and Judicial Proceedings Article of the Maryland Code.  Rather than answer this issue of first impression under Maryland law, this Court certified the following question to the Court of Appeals of Maryland: Is the Maryland Telephone Consumer Protection Act a statutory "specialty" law with a statute of limitations of twelve years pursuant to Maryland Courts and Judicial Proceedings § 5-102(a)(6)?  *See* Certification Order, ECF No. 140.  On December 20, 2010, the Court of Appeals of Maryland answered in the negative, and concluded that the statute of limitations for the Maryland TCPA is three years.  *See AGV Sports Group, Inc. v. Protus IP Solutions, Inc.*, 10 A.3d 745 (Md. 2010).

adopt a discovery tolling period for the Maryland TCPA so as to avoid "the incongruous result of a different limitations period applying to the same unsolicited fax ad." Pls.' Mem. at 22.

The Plaintiffs' argument is unavailing.  As the Fourth Circuit has noted, "[e]quitable tolling applies where a defendant, by active deception, conceals a cause of action," and requires evidence of affirmative misconduct.  *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002).  Here, there is no evidence of any kind of misconduct or concealment on the part of Protus.   Upon receiving an unsolicited fax advertisement, the Plaintiffs had "sufficient facts about the harm done to [them] that reasonable inquiry [would have] reveal[ed] [their] cause of action."  *Battle*, 288 F.3d at 604.

Under Maryland law, "statutes of limitations . . . are to be strictly construed; implied and equitable exceptions are frowned upon."  *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002) (applying Maryland law).  The Court of Appeals of Maryland has stated that "where the legislature . . . has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it."  *Colao v. County Council of Prince George's County*, 697 A.2d 96, 106 (Md. 1997).

Accordingly, under both the federal and Maryland TCPAs, the Plaintiffs' claims accrued when they received faxes at issue, and equitable tolling is unavailable.  Consequently, Protus is entitled to summary judgment on all faxes received by the Plaintiffs prior to

December 16, 2005 under the Maryland TCPA (three years) and for any faxes received prior to December 16, 2004 under the federal TCPA (four years).[12]

## V.  Corporate Standing under the Maryland Telephone Consumer Protection Act

Protus argues that only natural persons, not corporations or other entities, have standing to pursue statutory damages under § 14-3202 of the Maryland TCPA.  As such, Protus contends that the four corporate plaintiffs may not recover under the Maryland TCPA, and that Protus is entitled to summary judgment on these claims.

Under § 14-3202 of the Maryland TCPA, "an *individual* who is affected by a violation of this subtitle may bring an action against a *person* that violates this subtitle to recover" damages in the amount of "$500 for each violation."  MD. CODE ANN., COM. LAW § 14-3202(b)(2) (emphasis added).  An "individual" is defined in the Maryland Code as a "natural person,"[13] whereas a "person" is defined more broadly and includes natural persons, corporations, partnerships, associations, and the like.[14]  As is evident from the statute, "individuals" and "persons" are treated differently under the Maryland TCPA, and according to the well accepted dictates of statutory construction, only individuals (and not corporations) have standing in this matter.  *See Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 288 n.15 (4th Cir. 2004) (when statute is unambiguous on its face, courts must derive the

---

[12]   The specific faxes in question are identified by bates number in Exhibits 11 and 12 of the Defendant's Memorandum in Support of its Motion for Summary Judgment.  *See* Def.'s Mem at 14, ECF Nos. 212-11 and 212-12.

[13]   *See* MD. CODE ANN., TAX-GEN. § 10-101(g) ("'Individual' means, unless expressly provided otherwise, a natural person or a fiduciary."); *see also, e.g.*, MD. CODE ANN., FIN. INST. § 11-601(i); MD. CODE ANN., INS. § 9-401(g); MD. CODE ANN., REAL PROP. § 7-105(a).

[14]   *See* Md. Code Ann., Com. Law § 13-101(h); *see also* Com. Law §§ 14-101(d); 14-201(d); 14-301(e); 14-401(f); 15-501(d); 14-601(c); 14-701(d); 14-801(b); 14-901(i); 14-1001(d); 14-1301(c); 14-2801(d); 14-3401(c)(1).

meaning of the statute from the words chosen by the legislature) (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996)).

The Plaintiffs acknowledge that Protus' argument "has some legal merit," and essentially conceded this point at the hearing conducted on October 14, 2011.   In their papers, the Plaintiffs only argue that it is incongruous for the Maryland TCPA to restrict standing to natural persons where the federal TCPA to grant standing to corporations. Nevertheless, it is not for this Court to second guess the Maryland General Assembly's treatment of individuals and corporations differently under the Maryland TCPA. Accordingly, this Court concludes that the corporate plaintiffs lack standing under § 14-3202 of the Maryland TCPA, and Protus is entitled to summary judgment on those claims.

## VI.  The Telemarketing Sales Rule and Fax Broadcasters

In 1994, Congress passed the Telemarketing Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. §§ 6101 *et seq.* (2000).   The Telemarketing Act defines "telemarketing" as a "plan, program, or campaign which is conducted to induce purchases of goods or services . . . by use of one or more telephones and which involves more than one interstate telephone call."   *Id.* §6106(4).   As noted by the Fourth Circuit, the Telemarketing Act:

> instructed the [Federal Trade Commission ("FTC")] to "prescribe rules prohibiting deceptive . . . and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1) (2000).   Specifically, Congress directed the FTC to forbid "unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy," to restrict "the hours of the day and night when unsolicited telephone calls can be made," and to require that callers disclose information about the nature and purpose of the call. *Id.* § 6102(a)(3).

*National Federation of the Blind v. Fed. Trade Comm'n*, 420 F.3d 331, 334 (4th Cir. 2005). The FTC thereafter promulgated what is known as the Telemarketing Sales Rule, which states that it is an abusive telemarketing practice for a telemarketer to fail "to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any called identification service in use by a receipt of telemarketing call." 16 C.F.R. § 310.4(a)(7).

In Count III of their complaint, Plaintiffs contend that Protus violated the Maryland TCPA by failing to provide caller-identification information as required by the Telemarketing Sales Rule, but conspicuously fail to address how the FTC's regulations apply to facsimiles and fax broadcasters. Essentially, the Plaintiffs contend that because commercial advertisements were faxed over telephone lines, the Telemarketing Sales Rule must necessarily apply. However, as noted by the Plaintiffs, the FTC defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives *telephone calls* to or from a customer or donor." 16 C.F.R. § 310.2(bb) (emphasis added). Aside from arguing that the FTC's definition of telemarketing "is broad," Plaintiffs have provided no support for the proposition that the rule was intended to cover *fax* advertisers such as Protus. In *800-JR Cigar, Inc. v. GoTo.com, Inc.*, the United Stated District Court for the District of New Jersey refused to extend liability under the Telemarketing Act to internet search engines on account of their use of telephone lines. 437 F. Supp. 2d 273, 296 (D. N.J. 2006). In the same fashion, this Court concludes that the Telemarketing Act, and the Telemarketing Sales Rule are simply inapplicable to the fax advertising at issue in this litigation. Accordingly, Protus is entitled to summary judgment on Count III of the Plaintiffs' Complaint.

**VII.  Damages Under the Federal and Maryland Telephone Consumer Protection
Acts**

Protus argues that the Plaintiffs cannot recover damages under both the federal
TCPA and the Maryland TCPA.  In essence, Protus argues that because the Maryland statute
merely implements the federal TCPA, and because the two statutes regulate the same
conduct, the Plaintiffs should not be entitled to a windfall recovery for the same unsolicited
faxes they received.  Plaintiffs respond that "Protus's position would create legal and
practical difficulties for a court and plaintiff with federal and state TCPA claims who is
determined to have won on liability."  Pls.' Mem. at 36.

This issue has been, at least tangentially, addressed by the Court of Special Appeals of
Maryland in several unpublished opinions.[15]  In *Worsham v. Integrated Credit Solutions, Inc.*, No.
0815, at n.3 (Md. Ct. Spec. App. Sept. Term 2006) (unpublished), ECF No. 212-22, the
parties did not raise the issue, and the court declined to address the specific issue of recovery
under both the Maryland and federal TCPA statutes.  However, the court noted a "legitimate
concern as to whether separate sanctions may be imposed for both 1) a violation of the
federal TCPA and 2) an indistinguishable violation of the MD-TCPA."  *Id.*  The court went
on to note that "[i]t might well be argued that Maryland's 2004 enactment of what is now §
14-3201(2) is no more than the modality by which Maryland manifested its approval of

---

[15]   Under Maryland Rule of Civil Procedure 1-104, unreported opinions of the Court of Special
Appeals of Maryland are "neither precedent within the rule of *stare decisis* nor persuasive authority."
Md. Rule Civ. P. 1-104.  Nevertheless, insofar as no other court has addressed the presently pending
issue, this Court has reviewed certain unpublished opinions, and has cited them to the extent their
logic and reasoning are relevant.

treating violations of the federal TCPA as private rights of action in Maryland." *Id.*   The

court further stated:

> Under both the federal law and the Maryland law, the alternative measure of
> damages is "actual monetary loss from such a violation" (federal) or "actual
> damages sustained as a result of the violation" (Maryland).   Clearly the actual
> damages would not be multiplied by 2.   Wh[y] then should the alternative
> measure of damages be multiplied by 2?
>
> As the Second Circuit observed in *Foxhall Realty Law Offices, Inc. v.
> Telecommunications Premium Services, Ltd.*, 156 F.3d 432, 438 (2d Cir. 1998), "The
> TCPA does not provide a 'federal protection' but a permissive authorization
> to bring actions in state courts."   That state action would not be a new and
> distinct violation subjecting the violator to sanctions for two violations instead
> of one, which would be nothing more than a doubling of the permissible
> sanction.

*Id.*

In another unreported opinion from the Court of Special Appeals of Maryland, the

court quoted with approval the *Integrated Credit* decision in noting that it was "skeptical that a

plaintiff is entitled to recover damages under both the [Maryland TCPA] and the TCPA for

the same unsolicited fax," and expressed its "serious doubts as to the availability of double

damages for an identical violation of both acts." *Powers v. Dupree*, No. 2604, at 7-8 (Md. Ct.

Spec. App. Sept. Term 2007) (unpublished) ("*Powers II*").   However, in *Powers II*, the court

did award damages under both Acts, despite its skepticism.   The appeal arose out of a

default judgment proceeding, and because the defendants did not participate in the appeal,

the Court of Special Appeals of Maryland declined to review the issue *nostra sponte* and

awarded the Plaintiffs statutory damages under both Acts. *Powers v. Battaglia*, No. 1532 (Md.

Ct. Spec. App. Sept. Term 2006) (unpublished) ("*Powers I*").   On remand, the trial court

declined to award double damages, and the Plaintiff appealed again. *Powers II* at *3.   In the

second appeal, the Court of Special Appeals of Maryland, as a result of the "law of the case"
doctrine, concluded that the trial court was not entitled to revisit the issue on remand and
ordered it to abide by the previous appellate decision.  *Powers II* at 16.  The *Powers II* court
briefly reviewed the Maryland and federal TCPA statutes, and concluded that, although it
was unlikely that double damages are available, it could not definitively say that the *Powers I*
court was incorrect in awarding such damages.  *Id.*  Finally, In *Worsham v. Ehrlich*, the Court
of Special Appeals, in a published opinion, recounted the legislative history surrounding the
passage of the Maryland TCPA and specifically noted that "it is likely that the General
Assembly enacted the [Maryland TCPA] merely to enable a private right of action under the
TCPA, *not to create new causes of action*."  957 A.2d 161, 172 (Md. 2008) (emphasis added).

In light of the Court of Special Appeals of Maryland's skepticism and concern
regarding the availability of double damages under both the federal and state TCPAs, this
Court concludes, at least preliminarily, that the Plaintiffs are likely not entitled to damages
under both statutes.  However, this issue of first impression does not affect the disposition
of the cross-motions for summary judgment presently before this Court.  The question of
entitlement to damages under both the federal and state statutes can be addressed by the
parties with supplemental briefing prior to the submission of this case to the jury at the
conclusion of trial.

**CONCLUSION**

For the reasons stated above, the Defendant's Motion for Summary Judgment (ECF No. 212) is GRANTED IN PART and DENIED IN PART.  While the motion is generally denied as to liability, it is granted with respect to the 79 faxes at issue for which Defendant has no transmission data.  Moreover, the motion is granted with respect to Defendant's equitable tolling, corporate standing, and telemarketing sales rule arguments.  Accordingly, the Defendant is entitled to summary Judgment on Count III of the Plaintiffs' Complaint. The Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 230) is DENIED.

A separate Order follows.

Dated:          November 23, 2011

                                                    /s/_____
                                                    Richard D. Bennett
                                                    United States District Judge